WILLIAM KERSHAW, *Appellant,* v. W. L. SCHAFER et al., *Appellees.*

No. 17,881.

SYLLABUS BY THE COURT.

1. PRINCIPAL AND AGENT—*Sale of Land—Greater Price Offered to Agent—Bad Faith.*   Generally an agent employed to find a buyer for land who has received an offer from a prospective buyer therefor, has communicated such offer to his absent principal and has received an acceptance from the principal, may, if he has no knowledge of a better offer, communicate such acceptance to the prospective buyer and close the deal so far as his duties are concerned.   Thereafter he may engage as agent for the purchaser and resell the land at an advanced price.   If, however, the agent has information at any time before communicating the acceptance to the prospective buyer that a greater price can be had for the land than he communicated to his principal, then it is his duty, in the exercise of good faith, not to communicate the acceptance to the buyer, but to secure the higher offer for his principal and advise him thereof.

2. ———— *Instruction — Misleading—Not Prejudicial—Findings.* An instruction which might be misleading but which has become immaterial by reason of the findings of the jury is not a ground for granting a new trial.

Appeal from Pawnee district court. Opinion filed February 8, 1913. Reversed.

*G. Polk Cline,* and *G. W. Finney,* both of Larned, for the appellant.

*W. H. Vernon, W. H. Vernon, jr.,* both of Larned, and *Sam Jones,* of Lyons, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This action was brought by the appellant against W. L. Schafer, A. D. Smith, J. A. Franz, and A. C. Franz to recover the difference between $37 per acre and $42.50 per acre for a section of land (fractional) in Pawnee county.

The undisputed facts are that appellant owned the land and employed Schafer and Smith as his agents to find a buyer therefor, and set the price at $40 per acre. Appellant lived in Sterling, Neb., and Schafer and Smith lived in Pawnee county, Kansas. Soon after receiving the agency Schafer and Smith wrote Kershaw that they had an offer from Franz of $37 per acre for the land and made some statements indicating that they thought he should take it, remarking that the wheat was not looking good, etc. The appellant promptly accepted the offer by letter, expressing some reluctance. About the time of receiving Kershaw's answer to the proposition, Schafer and Smith negotiated a sale of the land for Franz for $42.50 per acre.

The appellant contends that this offer was made, and it was known to appellees that one Wynn would give this price for the land, before the appellees closed the deal with Franz for Kershaw at $37 per acre; that Franz conspired with Schafer and Smith to defraud appellant.

A trial was had and the jury returned a verdict in favor of A. C. Franz and failed to agree as to the other defendants. The case was continued as to these defendants and again tried. Parties waived any oral

testimony and submitted the case on the transcript of the evidence taken on the former trial, which was read to the jury.  The jury returned a general verdict in favor of J. A. Franz, and in favor of Kershaw and against Schafer and Smith for $1846.80, and made special findings of fact.  Defendants Schafer and Smith filed a motion for a new trial and a motion for judgment on the special findings.  Plaintiff Kershaw also filed a motion for judgment in his favor on the verdict and findings.  The case was continued.

At the next term the motion for judgment for plaintiff on the verdict and findings was overruled.  Also the motion for judgment on the findings in favor of the defendants was overruled.  Defendants' motion for new trial was sustained.  The reason for sustaining the motion is stated as follows:

"Now, to-wit: on this 29th day of September, 1911, being an adjourned day of the regular June, 1911, term of this Court, this matter came on for hearing, upon the motion of the Defendants W. L. Schafer and A. D. Smith for a new trial of this cause, which motion had been by the Court held under advisement until this date.

"And the Court having heard argument of counsel, and being fully advised in the premises, grants a new trial, for the reason that the Court misdirected the jury in a material matter of law, by instruction number 4, in this: That the Court instructed the jury that the Defendants' liability to Plaintiff continued until the purchaser had signed a contract for purchase, whereas as a matter of law, in the judgment of the Court, the liability of a selling agent of real estate to his principal is ended when he has in good faith submitted an offer to the principal which the principal had accepted."

The appeal is from the order granting a new trial, and plaintiff asks to have the case remanded with instructions to render judgment in his favor and against Schafer and Smith in accordance with the verdict.

The appellees contend that the case depends upon the

question of law whether or not an agent, employed to find a purchaser for real estate, who secures an offer from a proposed purchaser which is accepted by the principal, is held as such agent until the transaction is consummated, or can he, upon the acceptance of the offer, engage as agent for the proposed purchaser to resell the land. On the other hand, plaintiff contends that the case depends upon the question of fact whether or not the appellees knew, by having an offer or otherwise, that Wynn would pay more than $37 per acre before they negotiated the sale for plaintiff, and withheld this knowledge from him for the purpose of taking advantage thereof for themselves.

The court instructed the jury upon the law as applied to the diverse claims in instructions Nos. 3 and 4, which read:

"3. In this connection I instruct you that if you believe the transaction with J. A. Franz and A. C. Franz was in good faith, and that A. C. Franz, with the assistance of his father, was in good faith a purchaser of the land, and that at the time the contract was executed by A. C. Franz and the payment of $1000 made, Smith and Schafer were acting in good faith and had received no better offer for the land, then Plaintiff can not recover from them, and they had a legal right immediately upon the execution of the contract of purchase by Franz to become his agents for the purpose of selling the land again, and their obligation to Plaintiff had been fully discharged.

"4. If, on the contrary, you believe from a preponderance of the evidence that before the contract with Franz was signed by Franz, Defendants Schafer and Smith, or either of them, had a *bona-fide* offer of more than $37 per acre for the land, and for the purpose of taking advantage thereof themselves, withheld the knowledge of such offer from their principal, the Plaintiff, and closed the deal at a lower figure, then Plaintiff is entitled to recover from them the difference between $37 per acre and the amount of such offer, unless the Plaintiff shall have ratified their action as hereinafter explained."

The jury returned a verdict in favor of the plaintiff for $1846.80 damages, and returned the following, with other, special findings of fact:

"Question 3.   When was the letter of date February 21st written by Plaintiff received by Smith and Schafer?   Answer.   About February 26th, 1910.

"Question 4.   When did Smith and Schafer communicate to J. A. Franz the fact that his offer had been accepted?   Answer.   March 2nd, 1910.

"Question 6.   When was the contract of sale between Plaintiff and A. C. Franz for section 19 signed by A. C. Franz?   Answer.   March 2nd, 1910.

"Question 7.   When was the contract for sale between Plaintiff and A. C. Kranz mailed by Smith and Schafer to Plaintiff?   Answer.   March 3rd, 1910.

"Question 12.   Did not Plaintiff about April 29th, 1910, in writing extend the contract with A. C. Franz for nine days?   Answer.   Yes."

Additional questions submitted by plaintiff, with the answers of the jury thereto, are as follows:

"Question 1.   Is it not a fact that W. R. Wynn made an offer of $40 per acre for the land on February 28th, 1910, when he was viewing the land.   Answer.   Yes.

"Qestion 2.   Is it not a fact that A. D. Smith offered the land to W. R. Wynn on the train going to Hutchinson on February 28th, 1910, at $42.50 per acre.   Answer.   Yes.

"Question 3.   Is it not a fact that A. D. Smith gave W. R. Wynn an option until March 4th (Friday), 1910, to take the land at $42.50 per acre?   Answer.   Yes.

"Question 4.   Is it not a fact that W. R. Wynn did on March 3rd, 1910, agree to buy the land at $42.50 per acre, with Purdy, and made payment thereon of $500, and that the following day, March 4th, Wynn made formal written contract through Smith and Schafer for the land at $26,000?   Answer.   Yes.

"Question 5.   Is it not a fact that Kershaw had no notice of a trade or a deal with Franz, and that no trade with A. C. or J. A. Franz was or had been consummated until after they had got an offer from W. R. Wynn.   Answer.   Had no notice.

"Question 6.   Is it not a fact that Kershaw did not

close any deal with either of the Franzs until March 11th, 1910? Answer. March 11, 1910.

"Question 7. Is it not a fact that Smith and Schafer, as agents of Kershaw, acted in bad faith with their principal and concealed from Kershaw the Wynn offer? Answer. Yes."

As we have seen, the court granted a new trial on the ground of error in the fourth instruction given, in that it fixed the time at which the appellees were absolved from duty to their employer at the signing of the contract of sale and purchase between plaintiff and Franz. In overruling the motion for judgment the court held that appellees were absolved from such duty when they had informed the plaintiff of the offer and he had accepted it. The latter proposition can not be sustained. The employer was in another state, and it certainly devolved upon his agents to inform the purchaser of their employer's acceptance and to do whatever the circumstances rendered necessary to close the deal, assuming that nothing had occurred affecting the interests of the principal after the transmission of the offer. But a very important change in the situation had occurred. They had been offered $5.50 per acre more for the land some days before they communicated the offer to the purchaser. The jury found, and we think correctly, that they concealed this fact from their employer and were guilty of bad faith in so doing; also that in so doing they reaped a great advantage to themselves and their employer suffered a corresponding loss. By representing to their principal that the wheat on the land was in bad condition they had induced him to accept $3 per acre less for the land than the price he had authorized them to sell it for, and with knowledge that they could not only get the price he had fixed, but $2.50 per acre additional, they took advantage of his acceptance so procured, closed the contract at the accepted price, and

immediately resold the land for the purchaser to another and gained to themselves $2222.80 thereby.

The following appears to be the general rule in these circumstances: An agent employed to find a buyer for land who has received an offer from a prospective buyer therefor, has communicated such offer to his absent principal and has received an acceptance from the principal, may, if he has no knowledge of a better offer, communicate such acceptance to the prospective buyer and close the deal, so far as his duties are concerned. Thereafter he may engage as agent for the purchaser and resell the land for an advanced price. If, however, the agent has information at any time before communicating the acceptance to the prospective buyer that a greater price can be had for the land than he communicated to his principal, then it is his duty, in the exercise of good faith, not to communicate the acceptance to the buyer, but to secure the higher offer for his principal and advise him thereof. (*Moore v. Stone,* 40 Iowa, 259; *Short v. Millard,* 68 Ill. 292; *Walker v. Derby,* [U. S. C. C.] 5 Biss. 134; *Finnerty et al. v. Fritz,* 5 Colo. 174.)

Instruction No. 4 given is not in full accord with this rule. In the slight variance therefrom the instruction is too favorable to the appellees. It might have misled the jury, but it conclusively appears from the special findings of the jury that the verdict was not influenced or controlled thereby so far as it was erroneous; the error therefore becomes wholly immaterial. This court has recognized this principle in *C. K. & W. Rld. Co. v. Parsons,* 51 Kan. 408, 32 Pac. 1083, and in *Aultman v. Miller,* 52 Kan. 60, 34 Pac. 404, and in many other cases.

But it is said that after the appellees as agents of the plaintiff had executed a written contract with Franz for the sale and purchase of the land, and Franz had paid a part of the consideration, that the plaintiff

extended the time of payment for a part of the consideration, and that in so doing with knowledge of the facts he ratified the transaction and can not be heard to complain thereof. In the absence of proof that Franz conspired to defraud the plaintiff, it is not clear that the plaintiff could at that time, and after the resale of the land, so far as appears, to an innocent purchaser, have avoided the sale to Franz. Neither is the purpose of this action to avoid the sale to Franz, but to recover damages from the alleged unfaithful agents in the transaction.

The error in the instruction was not to the prejudice of appellees, and became immaterial. The evidence seems ample to support the findings and the findings to support the verdict. Hence the order setting aside the verdict was erroneous and materially prejudicial.

The order granting a new trial is vacated, and the case is remanded with instructions to enter judgment for the plaintiff upon the verdict.