No. 18,532.

GEORGE R. RINEBARGER, *Appellee,* v. A. M. WEESNER
et al., *Appellants.*

SYLLABUS BY THE COURT.

1. VENDOR AND VENDEE — *Agent Receiving Commissions from
   Both—Bad Faith.* Good faith is a vital principle of the law
   of agency which prohibits a real-estate broker from acting
   as the agent of both the vendor and vendee where their
   interests are antagonistic, without the knowledge of each
   that he is employed by the other.

2. DUAL CAPACITY—*Of Agent—Contract Unenforceable.* A con-
   tract to convey land made through the services of an agent
   employed and paid by the vendor will not be enforced against
   him, when, without his knowledge or consent, the vendee paid
   the agent a commission also for his assistance in making
   the purchase.

Appeal from Chase district court; FREDERICK A.
MECKEL, judge. Opinion filed January 10, 1914. Re-
versed.

*Owen S. Samuel,* of Emporia, and *Dudley Doolittle,*
of Cottonwood Falls, for the appellants.

*W. L. Huggins, Humbert Riddle,* and *Henry E.
Ganse,* all of Emporia, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action for specific perform-
ance of a contract for the sale of land. The defense is
based upon the alleged fraud of the defendants' agent
in negotiating the sale. A demurrer to the defendants'
evidence was sustained and they appeal.

The defendants' evidence tended to prove the fol-
lowing facts: They authorized J. E. Bocock, a real-
estate agent, to find a purchaser for their farm at the
price of $7500. The agent afterward came to the farm,
accompanied by the plaintiff. After looking over the

place he came into the house, leaving the plaintiff out-
side, and told the defendants that he had brought a
man to buy the farm; that he had talked a good deal
with him and could not get their price but had suc-
ceeded in obtaining an offer of $5000. This offer was
at once declined, and the agent then went out to the
roadside one or more times during the negotiations
and talked with the plaintiff, and finally returned to
the house and said that he, the agent, would give $6500
for the place net, clear of all expenses, and would
himself sell it to the customer for $7000. This dis-
position, if carried out, it will be seen, would have
given the agent $500 compensation for his services.
The fact was, however, that the plaintiff had offered
the agent $7000 for the farm, but this offer was not
made known to his principals. On the contrary, when
Mr. Weesner said that he would go out and talk with
the customer the agent persuaded him not to do so,
saying that it would spoil the trade, thus keeping the
defendants in ignorance of the offer. After the defend-
ants had consented to take $6500 net for their farm,
the agent went out again and said to the customer:
"There is just $200 between us" which the plaintiff
then agreed to pay to the agent in addition to the
$7000. The plaintiff was then brought into the house
by the agent and introduced to the defendants, and at
the agent's suggestion the parties arranged to meet in
town to have a contract written. This was done on the
same day, and the contract was signed by the parties
for the sale of the farm for $7000, $100 being paid
down. The $100 was borrowed by the plaintiff from
the agent, to whom the plaintiff gave his note for $300
to secure the repayment of the $100 borrowed and the
$200 he had agreed to pay the defendants' agent.

A few days after the contract was signed the de-
fendants learned for the first time that the plaintiff
had offered $7000 for the place before their agent had
made the proposition to pay them $6500 for it, and

that after making that offer the plaintiff had agreed to pay the agent $200 in order to get the place. The abstract recites that after being told that the defendants had paid their agent $500 commission, the plaintiff said to one of defendants' witnesses:

"I am paying him $200.00 . . . I had offered him $7000.00 for the place and those other items mentioned in the contract, and Mr. Bocock had come back to me, returned after the conversation, with the folks, meaning Mr. and Mrs. Weesner, and said there was just $200.00 between us, and I said, well, if that is the case I will pay it."

Again, it is recited that the plaintiff said to Mr. Weesner, when he complained that they (the defendants) had been wronged, that he was paying the agent $200 for commission for buying the place for him, and that the agent held his note for it and for the $100 borrowed. This conversation was about fifteen days after the trade and was the first information the defendants received that the plaintiff was paying their agent a commission.

While there are some other details the foregoing are the material facts as shown by the evidence. The transaction amounts to this. The defendants' agent had obtained an offer of $7000 for the place, which he concealed from the defendants, informing them only of an offer of $5000, or of $6500 if the proposition to pay that sum himself should be construed as indicating an offer by the plaintiff. Being informed by the defendants' agent that there was still $200 between the parties, the plaintiff paid that sum as compensation to the defendants' agent to obtain the benefit of the purchase.

The agent undertook the legally impossible feat of serving two masters whose interests were antagonistic, without the knowledge of one that he was employed by the other. The plaintiff knew that the agent was

20—91 KAN.

acting for the defendants, but the defendants did not know that he was acting for and receiving compensation from the plaintiff.

"The vital principle of the law of agency is said to be good faith, and this prohibits one from acting as the agent of opposing parties." (*Madden v. Provident Institution*, 77 Kan. 415, 418, 94 Pac. 793.)

The interests of the vendor and vendee conflicted, and therefore the principle stated in *Wilson v. Insurance Co.*, 90 Kan. 355, 358, 359, 133 Pac. 715, and *Bank v. Insurance Co.*, ante, p. 18, 137 Pac. 78, does not govern.

It is argued that because the defendants received just what they finally agreed to take for the land they have no cause of complaint. Their agreement, however, was made in reliance upon the untrue statement that the purchaser's offer was only $5000, or at most $6500, whereas it was $7000. Good faith required a frank disclosure of the offer. (*Kershaw v. Schafer*, 88 Kan. 691, 129 Pac. 1137.) It can not be presumed that the defendants would have accepted the agent's offer of $6500 if they had known that the customer had offered $7000, nor can it be supposed that they would have signed the agreement had they known that their own agent was receiving pay from the purchaser in addition to the $500 which was deducted from the consideration. Even if the agent's proposal could have been understood as an offer of $6500, it was still $500 below the amount actually offered; and finally, when the contract was signed it showed a consideration of $7000, which was still $200 below the amount actually paid by the purchaser, and this fact too was concealed from the defendants. The commission paid by the plaintiff to the defendants' agent was an inducement to fraudulently conceal the facts from his principals, which good faith required him to disclose.

Specific performance will be decreed only when equity requires it. A vendee who knowingly pays com-

missions to the agent of the vendor without his knowl-
edge or consent, in order to secure a better bargain,
can not successfully invoke the aid of a court of equity
to enforce a contract thus obtained.

The judgment is reversed, with instructions to over-
rule the demurrer.