No. 36,864

Juanita Heiserman, *Appellant*, v. Conrad A. Aikman, *Appellee*.

(186 P. 2d 252)

Isaac N. Williams, judge. Opinion filed November 8, 1947.

*Manford Holly*, of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch* and *Dale M. Stucky*, all of Wichita, were with him on the briefs of the appellant.

*John F. Eberhardt*, of Wichita, argued the cause, and *Robert C. Foulston, George Siefkin, George B. Powers, Samuel E. Bartlett, Andrew F. Schoeppel, Carl T. Smith, Stuart R. Carter* and *Thomas E. Woods*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action for damages alleged to have been sustained when the automobile in which plaintiff was a passenger collided at a street intersection with a car being driven by defendant. Judgment was for defendant. Plaintiff appeals.

Plaintiff was riding to the place where she was employed. The car in which she was riding was being driven by one Crook. There were two other passengers in the car besides plaintiff, who was in the rear seat. They were all going to work at the same place. It had been the practice of plaintiff and the other passengers to ride to work with another driver whom they paid, but this morning the other driver was sick and he had made arrangements with Crook to pick up his passengers. The plaintiff knew nothing of the arrangement between her regular driver and Crook and had no arrangement with Crook. The collision occurred near the center of the intersection of Hillside and Oakland streets in Wichita at about 7:45 a. m., January 16, 1946. Hillside is what is termed a through street protected by stop signs and runs north and south. Oakland runs east and west. At this intersection there is a stop sign on Oakland on each side of Hillside. Douglas avenue, which runs east and west, is the first street north of Oakland. The distance between these two streets is about 250 feet. Oakland is 26 feet wide. Hillside is about 45 or 46 feet wide as it enters Oakland on the north and about 30 or 31 feet wide as it leaves Oakland on the south. This makes a jog of eight feet on each side of Hillside on the south side of Oakland.

We shall refer to the car in which plaintiff was riding as the "Crook" car. On this morning Crook picked up his last passenger at the corner of Hillside and Douglas approximately 250 feet north of the intersection where the collision occurred. He drove on south to the intersection and was driving south to the intersection when the collision occurred. The defendant approached the intersection on Oakland from the east and was driving west a little past the middle of Hillside when the collision occurred. It will be noted the Crook car was on the through street. Defendant's car was on the street where the stop sign gave notice that the city ordinance made it his duty to come to a full stop before entering the intersection. It may be stated here, there is no dispute but that he did come to a full stop on the east side of Hillside and then proceeded to cross. His car was struck by the Crook car at the right front door about seven feet from the front of the car.

At the close of the plaintiff's evidence defendant's demurrer to it was overruled. On final submission the jury answered special questions and returned a general verdict for the defendant. Plaintiff's motion for a new trial was overruled and judgment entered for defendant. Hence this appeal.

The first argument of plaintiff on this appeal is that the answers of the jury to the special questions convicted defendant of negligence as a matter of law. Before we consider that argument we shall consider certain trial errors of which plaintiff complains.

This collision occurred at the intersection of a through street on which the Crook car was being driven and a street controlled by stop signs upon which defendant was driving his car.

Plaintiff argues it was error for the court to give instruction 8. That instruction was as follows:

"No. 8

"You are instructed that at the time of the collision involved in this lawsuit, the following ordinances of the City of Wichita were in force and effect:

" 'Speed of motor vehicles:

" 'Thirty (30) miles per hour upon all right-of-way streets, except within the congested district and other points hereinafter specified . . .

" '*Provided, however,* That no driver in any event shall drive at a greater rate of speed than is reasonable, safe and proper having due regard for the use and condition of the street and the occupancy thereof, at the time nor at such a rate of speed as to endanger the life, limb and property of any person.

" 'The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

" 'The driver of a vehicle shall stop as required by this ordinance at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right of way to the vehicle so proceeding into or across the through highway.'

"The violation of a traffic ordinance constitutes negligence."

The second and third paragraphs of this instruction are section 27 of ordinance 12-321 of the city of Wichita. This ordinance relates to speed of automobiles and is of no particular consequence here. The fourth paragraph is section 41 (a) of the above ordinance 12-321. The fifth paragraph is section 43 (a) of the same ordinance. It will be noted that each of these two latter sections deals with a certain type of intersection. Section 41 (a) lays down a rule of conduct for drivers of cars approaching an intersection of two ordinary streets, where there are no stop signs on either street. In such a case the driver first in the intersection has the right of way and the last car to approach must yield. That is just the enactment of a rule of the road prompted by the test of ordinary care.

The traffic problems of cities such as Wichita, however, require what have come to be designated as "through streets." They are usually so designated on account of the fact that they lead to some focal point to which an unusually large number of people generally desire to go at a certain time of day, that is, in the morning while people are going to work, at noon, and in the evening. Hillside is such a street. That street was designated by the city governing body as a through street because the airplane industry was located to the south of the city and it was deemed to the best interests of all concerned that it be so designated. The obvious purpose of so designating it was to speed up traffic upon it. One way of doing so was to provide that all vehicles approaching it should come to a stop before entering upon it or attempting to cross it. Naturally this situation relieves to a certain extent the care with which a driver on Hillside street must approach an intersection of it with a side street. Under the provisions of section 43 (a) the driver of a car approaching a through street must stop before he enters the intersection. That is not the sole provision, however. He must yield the right of way not only to vehicles which have entered the intersection ahead of him but also to those approaching so closely on the through street as to constitute an immediate hazard, that is, a driver of a car approaching a through street from a side street owes a duty not only to keep a lookout for cars in the intersection but on the through street in both directions from the intersection. A different standard of conduct is provided for each type of intersection.

This intersection was of a through street with an ordinary street. No one contends that defendant was not first in the intersection; no one disputes the testimony of defendant that he stopped. He testified that he looked to the north and saw nothing. It was proper for the court to instruct the jury as to section 43 (a) of the ordinance having to do with through streets. It should not have instructed the jury as to section 41 (a) having to do with ordinary intersections. To do so was error. In view of the verdict of the jury and its answers to special questions, it is doubtful whether this error would be held to be so prejudicial as to require a new trial. There is another grave question in the case, however.

Plaintiff argues that the trial court erred in giving instructions 10, 11 and 17. These instructions were as follows:

"No. 10

"The defendant alleges in his answer that the collision was caused by the negligence of the driver of the car in which plaintiff was riding and that Norman Crook was the agent of the plaintiff and that therefore the negligence of Crook was the negligence of the plaintiff.

"Plaintiff, in her reply has denied that Norman Crook was her agent and in this connection you are instructed that the burden of proof is upon the defendant to establish, by a preponderance of the evidence, that Norman Crook was in fact the agent of the plaintiff and further that Crook was guilty of negligence which contributed to the injury of the plaintiff. If the defendant establishes these facts, by a preponderance of the evidence, that would bar the plaintiff's recovery.

"The word 'agent' means one who acts for another. The burden of proof is upon the defendant to show, by a preponderance of the evidence, that Norman Crook was the agent of the plaintiff at the time of the collision in question.

"No. 11

"You are instructed that one of the defenses of the defendant is that both the plaintiff and the driver of the car in which plaintiff was riding were guilty of negligence which contributed to the accident. In this connection you are instructed that this defense must be proven by a preponderance of the evidence, and if you are satisfied that the plaintiff was guilty of any negligence which contributed to the accident, it would bar the plaintiff's recovery; or, if you find the driver of the car in which the plaintiff was riding was guilty of any negligence which contributed to . the accident and that the plaintiff and the driver of the car in which plaintiff was riding were at the time of the accident engaged in a joint adventure or that Norman Crook was plaintiff's agent, as otherwise instructed, that this would bar plaintiff's recovery."

"No. 17

"The defendants allege that the plaintiff and the driver of the car in which plaintiff was riding were engaged in a joint adventure or common enterprise and that the driver was negligent in the operation of the car and that the driver's negligence is imputed to plaintiff.

"In this connection you are instructed that if you find that the plaintiff and the driver of the car in which plaintiff was riding were engaged in a joint adventure or common enterprise at the time of the accident and that plaintiff's driver was negligent and that such negligence contributed to the accident, then in that event the plaintiff cannot recover.

"You are instructed that a 'joint adventure' is defined to be when two or more persons are engaged in a common purpose or enterprise and each has the right of joint control of the automobile in which they are riding, using the conveyance for their purpose, and each is said to be responsible for the acts of the other; but for this situation to arise, each must have equal right of control.

"A guest of a driver of an automobile cannot be regarded as engaged with the driver in a common enterprise to the extent that each is to be regarded as responsible for the acts of the other unless each has equal right of control.

While a mere guest riding with the driver of an automobile must exercise reasonable care for his or her safety, the negligence of the driver cannot be imputed to the guest unless there is an equal right of control.

"This control, however, need not have extended to actual manipulation at the time the injury was inflicted. It is sufficient that at the beginning of the enterprise, or as it progressed, or at any time before the accident each possessed equal authority to prescribe conditions of use."

There were several theories under the pleadings upon which the jury as it was instructed might have reached the verdict it did reach. First, it might have found that the defendant was not guilty of negligence; second, it could have found the plaintiff was guilty of contributory negligence independent of Crook; or third, it could have found Crook guilty of contributory negligence, but in order to find for defendant on that ground it had to find either that Crook was the agent of plaintiff or that Crook and plaintiff were engaged in a joint enterprise or adventure. In other words, before Crook's negligence could be imputed to plaintiff, the jury must find either Crook was her agent or that they were engaged in a joint enterprise.

In instructions 10, 11 and 17 the trial court submitted to the jury the defense of contributory negligence of plaintiff and whether Crook was the agent of plaintiff or they were engaged in a joint enterprise so as to impute Crook's negligence to her. Plaintiff points out that the undisputed evidence shows that her riding arrangement had been with another driver whom she paid each week; that on the morning in question the driver with whom she had the arrangement to pay was sick and had asked Crook to pick up his passengers, including plaintiff; that without any previous arrangement she entered the Crook car; that she did not pay Crook for the ride on the morning of the collision; and that the only thing she had in common with Crook was that they were in the same car and they were all going to the same place to work.

Plaintiff argues in the foregoing there was no substantial evidence of either agency or joint adventure, and, therefore, instructions 10, 11 and 17 should not have been given and that the giving of them was prejudicial to her because the jury reported that it stood 7 to 5 and when the trial court in response to a request of a juror gave an additional instruction on agency soon thereafter the jury returned a verdict for defendant.

The general rule contended for by plaintiff is found in 5 Am. Jur. 782, § 494, as follows:

23—163 Kan.

"Generally, negligence of the driver of an automobile is imputable to a passenger only where the driver is the agent or servant of the passenger at the time of the negligent act and the act is committed in the scope of the agent's or servant's employment, or when the driver and passenger are business partners or engaged in a joint enterprise and the operation of the vehicle is in furtherance of the business."

We approach this question carefully because agency between passenger and driver and joint adventure between them have some aspects in common. The basis of joint adventure is agency, but not every case of agency is joint adventure.

There are cases where it is proper to submit the question of agency even though there is no evidence of joint adventure or enterprise. It was proper for the trial court to submit to the jury the question of the contributory negligence of Crook, if there was substantial evidence that the relationship of agency, designated as that of master and servant, existed between Crook and plaintiff. We have heretofore set out the evidence in part on that point.

First, as to agency. Was there substantial evidence that Crook was acting for plaintiff so as to constitute him her agent. In considering this we must examine all the surrounding facts and circumstances. Obviously there was no express contract of agency between Crook and plaintiff on the morning in question. She did have, however, an express contract with the man with whom she had been riding, and who had requested Crook to act for him and pick up plaintiff along with other passengers on the morning in question. As far as the relationship between the plaintiff and Crook is concerned, Crook bore the same relationship to her that her regular driver bore. There is sufficient evidence that in driving the car in which plaintiff was riding on the morning in question Crook was acting for plaintiff. It was not necessary for there to be an express contract, the relationship of principal and agent or employer may arise from the acts of the parties. (See 2 C. J. 435.) We hold that there was substantial evidence of facts from which it might reasonably be inferred that such a relationship did exist. Hence the court was correct in submitting the issue of agency to the jury.

We shall examine the question of whether there was substantial evidence that Crook and defendant were engaged in a joint enterprise or adventure so as to impute the negligence of Crook to plaintiff. In order for the relationship of joint adventure to exist it must be proven not only that the two or more persons be engaged in a

common purpose, but each must have the right of joint control of the vehicle. In this case there can be no doubt but that all parties, that is, the driver and each of the three passengers, were all going to the same place to work. They had that in common. Did they each have joint control with the actual driver of the car?

When she was on the witness stand plaintiff testified, in part, as follows:

"The time which elapsed between the time I first saw the defendant's automobile and the time of the impact was a matter of seconds. I was in the back seat behind Mr. Crook. I had not during that morning undertaken to control his conduct in the operation of the car.

"Q. Did you have any reason to believe that if you had you would have gotten any response? A. What do you mean, sir?

"Q. Did you have at that time, any reason to believe that had you attempted to control Norman Crook in the operation of his automobile that there would have been any response or any result? A. If necessary, yes.

"But it was only a matter of seconds after I saw the car until the time of the impact. There was not sufficient time for me to do anything in that regard."

Defendant relies on her answer to the one question quoted above to sustain his contention there was sufficient right of control of the car shown to warrant the court in submitting the question of joint adventure to the jury.

We are unable to give that much weight to the testimony. It is clear from the entire excerpt that plaintiff did not fully understand the question. Furthermore, it is a conclusion of the witness, not a statement of ultimate fact. The plaintiff was riding in the rear seat directly behind the driver. In *Corley v. Railway Co.*, 90 Kan. 72, 133 Pac. 555, we said, citing 29. Cyc. 543:

"Where two persons are engaged in a common enterprise, using a conveyance for their purpose, each is said to be responsible for the acts of the other, but for this situation to arise each must have an equal right of control." (p. 74.)

In 5 Am. Jur. 780, § 492, the rule is stated as follows:

"It is only in those instances where the passenger or guest has some control or authority over the operation of the car that the negligence of the driver may be imputed to him."

In *Howard v. Zimmerman*, 120 Kan. 77, 242 Pac. 131, we said:

"An enterprise is simply a project or undertaking, and a joint enterprise is simply one participated in by associates acting together. The basis of liability of one associate in a joint enterprise for the tort of another is equal privilege to control the method and means of accomplishing the common design. If

the means employed be an instrumentality negligent use of which inflicts injury, the associate whom the law regards as participating in the conduct of the actor must have had equal control over its use. This control, however, need not have extended to actual manipulation at the time injury was inflicted. It is sufficient that, at the beginning of the enterprise, or as it progressed, or at any time before the tortious event, he possessed equal authority to prescribe conditions of use." (p. 79.)

If the plaintiff had equal control with the driver, then the same would be true of the other two passengers. This statement is a sufficient answer to the argument of defendant. Suppose each conceived that he had such joint control. As the car approached the intersection the passenger sitting beside the driver said—"Stop"—the one in the right rear seat said "Slow up"—the plaintiff said "Speed up." The danger became apparent and was all over in, at the most, a second or two. Who besides the driver had control of this car? The answer is "No one"—neither plaintiff nor either one of the other passengers. It must be that way in the traffic of a large city.

*Anthony v. Kiefner,* 96 Kan. 194, 150 Pac. 524, was a case where a mother was riding with her son. The question was whether the negligence of the son, who was driving, could be imputed to the mother because they were engaged in a joint enterprise. We reviewed the authorities and said:

"The only basis for the finding is that while on the ride as the guest of her son she told him that she would like to stop at the Norris place and get a cake which Mrs. Norris promised to make for her, and Lynn Kiefner expected to call there during the journey. This request and circumstance did not indicate that she had either management or control of the car, nor did it give the journey the character of a joint enterprise. . . . The fact that an owner of an automobile who has invited a guest to ride with him takes a particular course at the request and for the pleasure or convenience of the guest does not indicate management of the automobile nor result in responsibility of the guest for the conduct of the owner and operator. That was the holding in the Telfer case, where the driver went upon a visit at the request of his wife. It was expressly decided that the fact that the journey was made at her solicitation added no weight to the claim that she herself was negligent or that she was responsible for her husband's negligence, the court saying:

" 'It cannot be that one who merely secures from another the favor of transportation in a private vehicle takes upon herself or himself all risk of the driver's negligence *en route.* (*Reading Township v. Telfer,* 57 Kan. 798, 801, 48 Pac. 134, 57 Am. St. Rep. 355.)" (p. 199.)

Certainly the plaintiff in this case did not have any more control over the Crook car than the mother did in the Kiefner case.

The instruction as to joint adventure should not have been given. It was prejudicial to the plaintiff and the giving of it was reversible error. This brings us to a consideration of the argument of plaintiff that the answers of the jury to the special questions and the testimony of defendant convict the defendant of negligence as a matter of law. The ultimate facts have been set out heretofore. There was not much dispute in the testimony. The fact that the car in which plaintiff was riding ran into the side of defendant's car when it was about three-fourths of the way across the intersection, together with various other facts and circumstances, makes it a question for the jury whether the Crook car was near enough to the intersection when defendant entered it so that an ordinary, reasonable man would deem the Crook car an immediate hazard.

The judgment of the trial court is reversed with directions to grant plaintiff a new trial in accordance with the views herein expressed.

HARVEY, C. J. (concurring specially): I concur in the judgment of reversal, but state my reasons as follows: *First,* the only part of the ordinance which should have been given in the instruction is the paragraph pertaining to the care which should be used at an intersection of an ordinary street with a through highway. That was the only situation involved. To include in the instructions that part of the ordinance pertaining to street intersections, where neither street was a through highway, was inapplicable and necessarily confusing. *Second,* under the evidence plaintiff was a guest in the Crook car, hence it was error to give instructions on agency or on joint adventure. The court should have omitted entirely what was given on those subjects, or should have told the jury that the questions were not involved. One good test is this: Had the defendant brought an action for damages to his car or for personal injuries growing out of the collision could he have sued the plaintiff as principal upon the allegation that Crook was her agent? Or, if defendant would have sued Crook, on the ground that his negligence caused the damage, could he have joined the plaintiff as a party defendant upon the theory of joint enterprise? It seems clear to me that he could not have done either of those things successfully. *Third,* I am willing to say that the question of whether defendant was guilty of negligence was a question of fact rather than one of law, but note the jury found in answer to special questions that the Crook car was only 50 to 60 feet north of the intersection, travel-

ing at 25 to 30 miles per hour, when defendant entered the intersection. Had the jury found defendant negligent in entering the intersection under those circumstances, in view of the provision of the ordinance pertaining to such an intersection, I am confident this court would not have disturbed the finding.