No. 40,647

THEODORE SCHMID, *Appellant,* v. GUY L. ESLICK, *Appellee.*

(317 P. 2d 459)

Opinion filed November 9, 1957.

A. L. *Foster*, of Parsons, was on the briefs for appellant.

A. R. *Lamb*, of Coffeyville, argued the cause, and *Paul A. Lamb*, also of Coffeyville, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action for damages for personal injuries sustained in an automobile collision. Plaintiff (appellant) was riding in the front seat of a DeSoto sedan owned and driven by his neighbor Joe Blackburn when it collided with the rear of a Mercury sedan owned and driven by the defendant (appellee); both cars were traveling in the same direction. The jury returned a general verdict for the defendant and made special findings hereinafter detailed.

On October 15, 1955, plaintiff and his family and other friends gathered at the farm home of Charles "Dude" Blackburn, a neighbor of rural Parsons, for a fish fry. About 6:45 P. M. plaintiff announced he was out of cigarettes and suggested they go to Parsons to get some. Plaintiff's car was first in the driveway, Dude Black-

burn's car was second, and Joe Blackburn's (Dude's brother) De-Soto sedan was last. The testimony was undisputed that when plaintiff could not get his car out, he asked the Blackburns to move theirs, and Joe Blackburn suggested they take his car. The three men got in: plaintiff in the front seat next to the owner and driver, Joe Blackburn, and Dude Blackburn in the back seat. Joe Blackburn drove north on U. S. Highway 59, a paved north and south highway having a posted speed limit of 40 miles per hour where it forms the western boundary of the city of Parsons, and where it is also known as 32nd Street. Briggs Avenue is a narrow unpaved east-west street north of the south city limits, and intersects, but does not cross, U. S. Highway 59, so that traffic proceeding west on it must either turn north or south at that point.

The defendant was driving west on Briggs Avenue and made a right turn onto U. S. Highway 59. At a point about 25 feet north of the intersection, the left front of the DeSoto collided with the right rear of the Mercury. It was dark when the collision occurred and the headlights of both cars were illuminated. There was no evidence that the brakes of either car were applied, either before or at the time of the collision. The Mercury proceeded north for about 75 feet from the point of impact and turned over in a ditch on the west side of the highway; the DeSoto remained upright and stopped about 75 feet north of the intersection. The plaintiff suffered severe injuries as a result of the collision not necessary here to detail.

Plaintiff's amended petition alleged that his injuries were caused by the negligence of the defendant in failing to stop before entering a through highway in violation of G. S. 1949, 8-552, and that he entered the same when the DeSoto was approaching so closely as to constitute defendant's entrance a hazard; in failing to yield the right of way to the DeSoto, and in failing to keep a careful lookout ahead. The defendant in his amended answer denied his negligence and alleged that plaintiff's injuries were the result of an accident for which he was not responsible; that at the time of the collision the plaintiff and Joe Blackburn were engaged in a joint enterprise in driving to Parsons for the purpose of obtaining food and refreshments; that Joe Blackburn was guilty of negligence, the proximate cause of the collision, in driving at excessive speed; in failing to keep a proper lookout ahead; in failing to slow down to avoid the collision; in failing to apply his brakes and bring his car

under control so as to avoid running into the rear of the Mercury, and in failing to yield the right of way to the defendant, all of which negligence was imputable to the plaintiff. He also alleged negligence on the part of the plaintiff in failing to request Joe Blackburn to slow down and of failing to look ahead and observe the Mercury as it entered and traveled upon the highway.

At the trial plaintiff and Dude Blackburn testified that the Mercury did not stop before entering upon the highway; that as the DeSoto approached the intersection there was a car coming from the north about the same distance as the DeSoto was from the intersection; that the DeSoto veered to the right as it entered the intersection; that the Mercury, when coming onto the highway, made a big curve in turning north and the left front of the DeSoto collided with the right rear of the Mercury. The defendant testified that he stopped before entering U. S. Highway 59 at which time he saw the lights of a car, which later proved to be the DeSoto, about 600 feet south of the intersection; that he shifted into low gear, proceeded onto the highway and turned north, and was in the process of shifting into second gear when the impact occurred. Pictures of the automobiles taken after the collision were introduced in evidence, and they indicated the DeSoto hit the Mercury with a great impact while traveling at a high rate of speed. Evidence was introduced to prove contributory negligence on the part of the plaintiff, but the testimony was undisputed that immediately before the collision he called out, "Look out, Joe. We are going to collide with him." The defendant offered no evidence of joint enterprise but rested that defense on plaintiff's evidence of the purpose of the trip. At the close of the defendant's testimony plaintiff demurred on the ground there was no evidence to support the defense of joint enterprise or the defense of contributory negligence on the part of the plaintiff, which was overruled.

Among other instructions the trial court gave Instructions No. 25 and 29, which were objected to by the plaintiff. No. 25 was as follows:

"You are instructed that if you shall find and believe from a preponderance of the evidence, that plaintiff sustained the injury or damage, as alleged by him in his petition, and you further find and believe from such evidence said injuries or damage was accidental, and was not the result of the negligence of the defendant, then the plaintiff cannot recover of the defendant in this case, and your verdict should be for the defendant.

"An unavoidable accident is an inevitable casualty, or the act of providence,

or such unforeseen events, misfortunes, losses, acts or omissions, as are not the result of any negligence or the misconduct of either of the parties."

Instruction No. 29 purportedly defined joint enterprise and instructed the jury that if it found that the plaintiff and Joe Blackburn at the time of the collision were engaged in a joint enterprise as therein defined, and if the negligence of Joe Blackburn was the sole proximate cause of plaintiff's injuries, then the plaintiff could not recover. The trial court submitted twelve special questions to the jury. The plaintiff objected to the following: Special question No. 8 for the reason that the defendant's amended answer pleaded an "accident" and the special question required an answer based on the trial court's instruction defining "unavoidable accident," further, that the question was contrary to the evidence and the law of the case; No. 9 for the reason there was no evidence establishing joint enterprise and the question clarified no issue and served only to confuse the jury; and, No. 10 as it assumed plaintiff might have done something more than to warn the driver. The objections were overruled.

The jury returned a general verdict for the defendant. In response to special questions submitted, the jury found, *inter alia,* that the defendant stopped at the entrance to the highway. In answer to special questions No. 5 and 9, it found that the plaintiff and Joe Blackburn were engaged in the joint enterprise of "going after cigarettes." In answer to special question No. 8, one to which plaintiff objected, it found that the injuries sustained by plaintiff were the result of an "accident" as defined in the court's instructions. No answer was given to question No. 7: "If you find the defendant was negligent, set out the act or acts of negligence you so find," while in answer to special question No. 1 the jury found that Joe Blackburn and the defendant "or either of them" could have avoided the collision by exercising ordinary care. Plaintiff moved to set aside the answers to special questions 1, 5, 8 and 9, on the ground that they were inconsistent and unsupported by the evidence, and for a new trial. Following the overruling of both motions plaintiff appealed.

Plaintiff here contends that the trial court erred in giving instructions and submitting special questions to the jury on joint enterprise and unavoidable accident, and in failing to set aside the inconsistent and unsupported findings.

We shall first discuss plaintiff's contention that the trial court er-

roneously instructed the jury on joint enterprise. A joint enterprise is an undertaking to carry out an act or objective which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise. The law then considers that each is the agent of the other; and the acts of any one within the scope of the enterprise may be charged against the other. To constitute a joint enterprise between a passenger and a driver of an automobile, there must be a common purpose for which they jointly use and occupy the motor vehicle so as to give each the equal privilege and right to control and manage its operation. (*Reading Township v. Telfer*, 57 Kan. 798, 48 Pac. 134; *City of Leavenworth v. Hatch*, 57 Kan. 57, 61, 45 Pac. 65; *Corley v. Railway Co.*, 90 Kan. 70, 133 Pac. 555; *Anthony v. Kiefner*, 96 Kan. 194, 150 Pac. 524, L. R. A. 1915 F, 876, and cases cited, AC 1916 E, 264; *Bradshaw v. Payne*, 111 Kan. 475, 207 Pac. 802; *Clark v. Railroad Co.* 115 Kan. 823, 825, 244 Pac. 920; *Howard v. Zimmerman*, 120 Kan. 77, 242 Pac. 131; *Link v. Miller*, 133 Kan. 469, 300 Pac. 1105; *Farmer v. Central Mut. Ins. Co.*, 145 Kan. 951, 67 P. 2d 511; *Heiserman v. Aikman*, 163 Kan. 700, 186 P. 2d 252.) Under the doctrine of joint enterprise whereby the negligence of one party is imputed to the other upon the relation of agency, there must be equal responsibility for the negligent operation of the vehicle, and there can be no equal responsibility unless there is an equal right to control.

In *Howard v. Zimmerman*, supra, this court stated the basic requisites of joint enterprise, as follows:

". . . An enterprise is simply a project or undertaking, and a joint enterprise is simply one participated in by associates acting together. The basis of liability of one associate in a joint enterprise for the tort of another is equal privilege to control the method and means of accomplishing the common design. If the means employed be an instrumentality negligent use of which inflicts injury, the associate whom the law regards as participating in the conduct of the actor must have had equal control over its use. This control, however, need not have extended to actual manipulation at the time injury was inflicted. It is sufficient that, at the beginning of the enterprise, or as it progressed, or at any time before the tortious event, he possessed equal authority to prescribe conditions of use." (l. c. 79.)

The mere association of persons riding together in an automobile, having a common purpose in making a trip and a common distination at the journey's end, does not in itself give to each the equal privilege and right to control the method and means of operating the automobile so as to constitute a joint enterprise, notwithstanding

that the driver may take a particular route at the request and for the pleasure and convenience of one of the persons (*Reading Township v. Telfer*, supra; *Anthony v. Kiefner*, supra; *Kessler v. Davis*, 111 Kan. 515, 517, 207 Pac. 799; *Farmer v. Central Mut. Ins. Co.*, supra; *Clark v. Railroad Co.*, supra; *Corley v. Railway Co.*, supra; *Link v. Miller*, supra.) More than that is required. In *Reading Township v. Telfer*, supra, this court said that the doctrine of imputable negligence, except when countenanced by statute, is a fiction of the law which finds small favor with the courts. In the option it was said:

". . . It cannot be that one who merely secures from another the favor of transportation in a private vehicle takes upon herself or himself all risk of the driver's negligence *en route*. . . ." (1. c. 801.)

The essential question is whether, under the facts and circumstances, the driver and the passenger can be found by implication to have agreed to have an equal privilege and right to manage and control the vehicle. Application of this rule of law to facts and circumstances presented must be done in the light of the realities of life. To theorize is one thing—to examine and interpret facts in the light of practical human experiences, is another. (*Bedenbender v. Walls*, 177 Kan. 531, 537, 280 P. 2d 630.) We think it clear that in the ordinary and accepted affairs of men, the "control" of an automobile which is ascribed to a passenger in applying the doctrine of joint enterprise, often is too obviously a fiction upon which is erected a second fiction that the driver is his agent. As a practical matter, it must be conceded that when an automobile is driven on present-day highways with their peculiar hazards of traffic, a passenger has no physical control over the operation of the vehicle and may not, in safety to himself, the driver, or others lawfully using the highways, interfere with that operation. If he has concern for the safe operation of the vehicle, he may warn, he may admonish, or he may protest, but it is "the man behind the wheel" who actually controls and directs its speed and operation. Unless that fact be recognized, the doctrine will too often be applied to situations asserted to be joint enterprises which are in fact only matters of friendly or social co-operation and accommodation where the reason for placing liability upon the participants is not the same as if they were engaged in business or commercial ventures. In determining the passenger's right to equal control we have held that it is not the fact he does or does not give directions, but rather, the understanding

between the parties that he has the right and is possessed of equal authority to prescribe conditions of use and operations. (*Howard v. Zimmerman*, supra.)

In the absence of circumstances indicating such an understanding, we have held in effect that companions going on a hunting trip with the passengers paying the expenses (*Bedenbender v. Walls*, supra); members of a family going to visit a relative at the solicitation or request of a passenger (*Reading Township v. Telfer*, supra); passengers returning from a concert (*City of Leavenworth v. Hatch*, supra); parties returning from a coon hunt (*Bradshaw v. Payne*, supra); passengers who arranged with the owner to drive them to a hospital to visit a sick relative (*Clark v. Railroad Co.*, supra); a passenger invited to accompany the driver's family to attend a relative's funeral (*Link v. Miller*, supra); a son and father traveling together to seek work, sharing expenses (*Farmer v. Central Mut. Ins. Co.*, supra); delegates of a fraternal organization traveling together to a state convention and sharing expenses (*In re Estate of Dikeman*, 178 Kan. 188, 284 P. 2d 622); and a farmer riding to town at the invitation of his neighbor to sell the farmer's produce (*Kessler v. Davis*, supra), were not joint enterprise situations and that the negligence of the drivers or operators in control of the vehicles was not imputable to the passengers.

Where trials are by a jury, it is the sole province of the court to decide questions of law as distinguished from questions of fact. One of the court's duties is to instruct the jury on the law applicable to the theories of both parties so far as they are supported by any competent evidence (*Knox v. Barnard*, 181 Kan. 943, 317 P. 2d 452, this day decided). The instruction given must be germane to the issues raised by the pleadings and must be limited to those issues supported by some evidence (*A. T. & S. F. Rld. Co. v. Bell*, 52 Kan. 134, 34 Pac. 350; *Houghton v. Sabine Lumber Co.*, 128 Kan. 584, 278 Pac. 758; *Harshaw v. Kansas City Public Ser. Co.*, 154 Kan. 481, 119 P. 2d 459; *Lord v. Hercules Powder Co.* 161 Kan. 268, 167 P. 2d 299). Where no evidence is presented, or the evidence presented is undisputed and is such that reasonable men could not accept it as sufficient to establish the existence of a fact, it becomes the duty of the court to remove the issue from the jury. In that event, the matter becomes a question of law for the court's determination. (*Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621; *Ismert-*

*Hincke Milling Co. v. Ismert Estate,* 136 Kan. 617, 16 P. 2d 521; *Cates v. City of Independence,* 139 Kan. 805, 33 P. 2d 161.) In *Kemp v. Railway Co.,* supra, it was said:

"Courts should be careful not to encroach upon the province of jurors when the facts, although undisputed are such that the minds of candid persons may draw differing inferences and arrive at opposing conclusions. This wholesome rule, however, should not be stretched so far as to relieve the courts from the solemn duty of deciding the issue in cases like this where such divergence can not be found consistently with reason and justice. In such a situation the question is one of law only." (l. c. 483.)

The record before us discloses that the plaintiff expressed a desire to go to Parsons to get some cigarettes. Upon discovering that his car was not accessible, Joe Blackburn volunteered to take him to Parsons in his car. The plaintiff accepted Blackburn's invitation, got into the car, and on the way to Parsons the collision occurred. Obviously, he and Blackburn had a common purpose in making the trip, and a common destination, but in viewing the evidence in the light most favorable to the defendant, there is nothing in the record to indicate that the plaintiff had the privilege and equal right to control and manage the DeSoto.

Under the facts and circumstances of this case the plaintiff was a guest in the Blackburn automobile and Blackburn's negligence, if any, may not be imputed to the plaintiff under the doctrine of joint enterprise when none existed. (*Clark v. Railroad Co.,* supra, p. 825; *Bradshaw v. Payne,* supra, p. 481.) It is clear to us that had the defendant brought an action for damages to his car or for personal injuries growing out of the collision, he could not have sued the plaintiff as the principal upon the allegation that Blackburn was his agent. Or, had he sued Blackburn on the ground that his negligence caused the damage, he could not have joined the plaintiff as a party defendant upon the theory of joint enterprise. (*Heiserman v. Aikman,* supra, concurring opinion of Harvey, C. J., p. 709; 5 Am. Jur., Automobiles, § 492, p. 780; Restatement of the Law, Torts, § 491; 80 A. L. R. Anno. p. 312; 95 A. L. R. Anno. p. 858.) Where there is no evidence from which a jury could find that the passenger had equal privilege and right to control the operation of the vehicle, the issue of joint enterprise is not a question of fact for the jury (*Anthony v. Kiefner,* supra; *Heiserman v. Aikman,* supra). Under such circumstances the issue becomes a question of law for the trial court's determination and its duty is to remove

the issue from the jury. As previously indicated, that issue should have been removed from the jury's consideration and the giving of Instruction No. 29 was error, and we cannot say the error was harmless. The instruction was grossly misleading because it implied the existence of facts from which a jury could find that a joint enter-prise existed, when the record disclosed no such evidence. With that instruction before the jury, the general verdict for the defendant is subject to two interpretations—either the jury found the defendant free from negligence, or it found the defendant negligent, but barred plaintiff's recovery by imputing to him Joe Blackburn's contributory negligence.

The plaintiff next argues that the trial court erred in giving Instruction No. 25 and submitting special question No. 8 to the jury. At the trial the plaintiff entered a general objection to both on the ground that they were prejudicial and did not state the law of the case.

The trial court instructed the jury on all phases of the law of negligence appropriate to the issues raised by the pleadings and to facts and circumstances established by the evidence of both parties, including that charged to the defendant in the amended petition and to the plaintiff in the amended answer. An appropriate instruction was given concerning proximate cause that if plaintiff recovered, it must be on the grounds of negligence alleged in his petition; that negligence was not to be presumed but was a fact to be proved by the plaintiff, and, in substance, that the mere receipt of injury and damage was not proof of negligence nor did the proof thereof entitle plaintiff to recover unless the jury found, under the instructions given, that such injury and damage, if any, resulted from the negligence of the defendant in the manner alleged in the petition. An appropriate instruction was given concerning plaintiff's contributory negligence in the manner alleged in the amended answer to the effect that if his negligence was the proximate cause of his injury and damage, he could not recover. Under the facts and circumstances disclosed by this record, we think the trial court erred in giving Instruction No. 25, since it was inconsistent with the evidence. The term "unavoidable accident" implies that the injury occurred without the negligence of either party and could not have been prevented by their exercise of ordinary care and prudence. (90 C. J. S., Unavoidable, p. 1024; 65 C. J. S., Negligence,

§ 21, p. 430; 1 C. J. S., Accident, p. 442; 65 C. J. S., Negligence, § 264, pp. 1192, 1193.) In *Knox v. Barnard,* supra, it was held:

"Generally speaking, as applied to automobile negligence cases, the term 'unavoidable accident' excludes and repels the idea of negligence, and refers to one which is not occasioned in any degree, either directly or remotely, by the want of such care or prudence as the law holds every person bound to exercise—that is, an occurrence which is not contributed to by the negligent act or omission of either party. In one sense, the term is synonymous with 'mere accident' or 'pure accident,' which imply that the accident was caused by some unforeseen and unavoidable event over which neither party had control.

"Generally speaking, when an accident is caused by negligence there is no room for application of the doctrine of 'unavoidable accident,' even though the accident may have been 'inevitable' or 'unavoidable' at the time of its occurrence, and one is not entitled to the protection of the doctrine if his negligence has created, brought about, or failed to remedy a dangerous condition resulting in a situation where the accident is thus 'inevitable' or 'unavoidable' at the time of its occurrence. In other words, a person is liable for the combined consequences of an 'inevitable' or 'unavoidable' accident and his own negligence." (Syl. ¶¶ 3, 4.)

The plaintiff next contends the trial court erred in overruling his motion to set aside the jury's answers to special questions No. 1, 5, 8 and 9. Obviously, what has been said requires a reversal of this case and the sustaining of plaintiff's motion for a new trial, which not only sets aside the verdict but also the answers to all special questions. (*Nicholas v. Latham,* 179 Kan. 348, 353, 295 P. 2d 631.)

As heretofore indicated, the giving of Instructions No. 25 and 29 over the objection of the plaintiff was prejudicial error which requires a reversal of the judgment. Accordingly, this case is reversed with directions to the trial court to sustain plaintiff's motion for a new trial and to proceed in accordance with the views expressed herein.

It is so ordered.