No. 41,592

ROBERT ANGELL, *Appellee*, v. SCOTT B. HESTER, *Appellant.*

(348 P. 2d 1050)

Opinion filed January 23, 1960.

*Frank S. Hodge,* of Hutchinson, argued the cause, and *Eugene A. White, Robert Y. Jones* and *H. Newlin Reynolds,* all of Hutchinson, were with him on the brief for appellant.

*Don Wyman,* of Hutchinson, argued the cause, and *Max Wyman,* also of Hutchinson, was with him on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a negligence action to recover damages for personal injuries sustained in a motor vehicle collision on a state highway. The jury returned a verdict for the defendant, after which the trial court granted the plaintiff's motion for a new trial. Appeal has been taken by the defendant from this order.

The only question presented is whether the trial court erred in ordering a new trial.

The established rule in this jurisdiction is that if a·trial court is dissatisfied with a verdict it not only has the authority but it is its duty to set such verdict aside and grant a new trial. An order of a trial court allowing a motion for new trial will not be reversed unless this court is satisfied its action was wholly unwarranted and clearly amounts to an abuse of discretion. Further, the granting of a motion for a new trial rests so much in the trial court's sound discretion that its action will not be held to be reversible error on appellate review unless it can be said the party complaining thereof has clearly established error with respect to some pure, simple and unmixed question of law. (*Schroeder v. Texas Co.,* 169 Kan. 607, 219 P. 2d 1063; *Nicholas v. Latham,* 179 Kan. 348, 295 P. 2d 631; *Gould v. Robinson,* 181 Kan. 66; 309 P. 2d 405; and authorities cited in these opinions.)

Robert Angell (plaintiff-appellee) was a passenger in an automobile driven by Lawrence Roberts. Orville Oller was also a passenger in the automobile. They were part of an oil field crew and were returning home from work near Great Bend, Kansas, to the vicinity of Hutchinson at approximately 10:30 a. m., on the morning of January 18, 1956. It was daylight, the pavement was dry and the view was clear. Angell, riding in the front seat, was asleep at the time Roberts drove his vehicle into the rear of a pick-up truck driven by Scott B. Hester (defendant-appellant) on U. S. Highway No. 50S, approximately nineteen and one-half miles west of Hutchinson, Kansas. At the time of the accident Roberts was driving from sixty to sixty-five miles an hour in an easterly direction, and the evidence was conflicting as to whether the pick-up truck driven by Hester in the same direction was stopped or proceeding slowly on the highway.

Angell was seriously injured and sought recovery of $124,729.40 from Hester, The answer alleged Angell had accepted and received the sum of $13,000 from Roberts for his injuries and damages received in the accident, whereupon Angell replied admitting this fact and requested that the $13,000 be deducted from the sum sought to be recovered from Hester.

The acts of negligence alleged by Angell in his petition were (1) that Hester's automobile was stopped on the highway, or (2) that Hester was proceeding at such a slow rate of speed as to impede or

block the normal flow of traffic, or both. Hester's answer alleged contributory negligence on the part of Angell. It also alleged that Roberts was the agent of Angell and by reason thereof the negligence of Roberts barred recovery on the part of Angell. The answer further alleged that Angell and Roberts were engaged in a joint enterprise and by reason thereof the negligence of Roberts barred recovery on the part of Angell.

The case was submitted to the jury on the plaintiff's theory of negligence.

The evidence did not raise any issue as to a joint enterprise and no instructions were requested by Hester on this theory. He did, however, request instructions on the theory of agency existing between Roberts and Angell and the trial court instructed on agency by its instruction No. 6. Pursuant to request it also gave additional instructions on agency in considerable detail. All of the instructions on agency were given over the objection of counsel for Angell on the ground the evidence on this point was insufficient.

The jury returned a verdict for the defendant answering all the special questions submitted by the court as follows:

"Question No. 1: Was defendant stopped on the highway at the time of the collision?

"Answer: No.

"Question No. 2: If you answer No. 1 in the affirmative, was such a proximate cause of the collision?

"Answer: ——.

"Question No. 3: Was Roberts acting as agent of the plaintiff at the time of the collision?

"Answer: Yes."

We are informed by counsel for Angell in his brief that the jury returned to the courtroom on four different occasions, after the case was submitted to it, for clarification of the court's instruction No. 6 relative to agency.

The trial court after hearing argument on the motion for a new trial took the matter under advisement. After reviewing the evidence in considerable detail, it concluded the evidence raised no issue of agency and consequently the instructions given to the jury on agency were not justified. The trial court thereupon granted a new trial.

Generally, the negligence of the driver of an automobile is imputable to a passenger only where the driver is the agent or servant of the passenger at the time of the negligent act and the act is com-

mitted in the scope of the agent's or servant's employment, or when the driver and passenger are business partners or engaged in a joint enterprise and the operation of the vehicle is in the furtherance of the business. (*Heiserman v. Aikman,* 163 Kan. 700, 186 P. 2d 252; and 5 Am. Jur., Automobiles, § 494.) Apparent language to the contrary in *Kendrick v. Atchison, T. & S. F. Rld. Co.,* 182 Kan. 249, 262, 320 P. 2d 1061, must be construed in accordance with the concept properly expressed in the *Heiserman* case that "The basis of joint adventure is agency, but not every case of agency is joint adventure." (p. 706.)

The evidence before the trial court established a "car pool" or "share-the-ride" arrangement in which Roberts and the members of his oil field crew, consisting of Angell, Oller and one by the name of Scholler, took turns in driving their respective automobiles back and forth to work, a distance of approximately one hundred miles from their homes. Each one drove every fourth day. On the day in question Scholler left the automobile at Great Bend where he remained and was not in the automobile when the collision occurred.

The trial court in its memorandum opinion correctly analyzed the *Heiserman* decision to the effect that the agency relationship (aside from joint venture or partnership) which will justify the imputation of a driver's negligence to his passenger, must be of a master and servant or employer and employee type.

Upon the record presented in the instant case the evidence would not warrant a jury in finding that an agency relationship existed between Angell and Roberts.

The appellant relies upon testimony that Roberts was driving for the others. The only testimony which could possibly be so construed is the cross examination of the witness Oller where he testified concerning the share-the-ride arrangement as follows:

"Q. Now, I believe this arrangement, this car arrangement that you had, you said each man took his car every fourth day?

"A. That was the procedure, yes.

"Q. And the man who was driving was driving for the other three fellows in the car?

"A. That's right, the other three fellows was riding with the man that was driving.

"Q. So each one of you drove for the other on his respective day?

"A. That's right."

When construed with his testimony on direct examination, Oller's answers to the questions put by appellant's counsel indicate no more than that the men had an ordinary "car pool" or "share-the-ride" arrangement. (See *Kendrick v. Atchison, T. & S. F. Rld. Co.,* supra; and *Ehrsam v. Borgen,* 185 Kan. 776, 347 P. 2d 260.) The answers do not evidence any thought on the part of Oller that the driver, whoever it might be, was the servant of the others, or that the others were his employers. The learned trial judge correctly observed in his memorandum decision:

". . . It must be borne in mind that the phraseology used was that of defendant's counsel, and when considered in that context, I cannot conceive of Oller's monosyllabic replies arising to the dignity of probative evidence of an 'express contract' under which Roberts was employed, for a monetary consideration, to transport plaintiff to and from work. In my view, that fragmentary bit of testimony cannot be construed as forming a basis for enlarging a share-the-ride scheme into an agency akin to a master-servant relationship."

In fact, the evidence was that in driving to and from work, the driver was in charge of his automobile and it was his privilege to determine which route he wanted to travel.

The *Heiserman* decision does not say a share-the-ride agreement is a contract between the parties which constitutes the driver of the automobile the agent of the passengers. It merely holds on the basis of the record in that case sufficient evidence was present to warrant submission of the case to the jury on the question of agency. There it had been the practice of the plaintiff and the other passengers to ride to work with another driver whom they paid, but on the morning of the accident the other driver was sick and he made arrangements with Crook, the driver involved in the accident, to pick up his passengers. All were going to work at the same place. The plaintiff knew nothing of the arrangements between her regular driver and Crook and she had no arrangement with Crook. As to the plaintiff it was said Crook bore the same relationship to her that her regular driver bore.

The appellant urges that even though it may be determined to have been error to instruct on agency, nevertheless the error is wholly immaterial and nonprejudicial in view of the jury's special finding that the defendant was not stopped on the highway at the time of the collision. While it is true that misleading instructions become immaterial where it conclusively appears from the special findings that the jury was not influenced or controlled thereby, (*Kershaw v. Schafer,* 88 Kan. 691, 129 Pac. 1137; and authorities

cited therein) this rule can have no application here because the plaintiff charges the defendant with negligence not only in stopping on the highway (G. S. 1949, 8-570) but also in driving at such a slow speed as to impede or block the normal and reasonable flow of traffic (G. S. 1949, 8-534). Either of such acts would be in violation of the above statutory provisions, but the jury's findings related only to the first. There is no finding that the defendant's speed was not so slow as to impede traffic.

The appellant argues that when the case went to the jury, all of the plaintiff's evidence was to the effect that the truck was stopped. The defendant's evidence was that he was proceeding about thirty miles per hour. There was no other traffic upon the highway except an automobile traveling several hundred yards back of the Roberts automobile. There were no automobiles approaching from the opposite direction. The appellant states the appellee had offered no proof whatever on the second allegation of negligence and the court should not have submitted an instruction to the jury with respect to it. This point is not well taken. The foregoing statements of fact with respect to traffic upon the highway are correct. However, Roberts testified on behalf of the plaintiff that it was *his opinion* the pick-up truck was stopped on the highway at the time of the collision, although when he first observed the pick-up truck a quarter of a mile away he stated it was moving. On such evidence a finding by the jury that appellant Hester's pick-up truck was traveling so slowly as to impede or block the normal and reasonable flow of traffic, had one been made, would not only be proper, but it would be consistent with the finding that the pick-up truck was not stopped on the highway.

The appellant argues that in the absence of a request for special findings of fact, a general verdict such as the one we have here, resolves all controversial issues in favor of the prevailing party, citing *Rowhuff v. Kansas Turnpike Authority*, 182 Kan. 748, 324 P. 2d 147; and *Taylor v. State Highway Commission*, 182 Kan. 397, 320 P. 2d 832. He further argues a general verdict finds every material and issuable fact in favor of the prevailing party (citing, *Cook v. Railway and Bridge Co.*, 101 Kan. 103, 165 Pac. 803, affirmed on rehearing in 101 Kan. 437, 166 Pac. 498) and since the appellant was the prevailing party upon the verdict, the second issue of negligence was resolved against the appellee and in favor of the appellant (citing, *King v. Vets Cab, Inc.*, 179 Kan. 379, 295 P. 2d 605).

Upon the facts and circumstances presented by the record herein, the authorities cited by the appellant have no application. In all cases cited by the appellant except the *King* case no special questions were submitted. The *King* case concerns inconsistent answers given in response to special questions and a new trial was directed on appeal, thereby reversing the trial court. In the instant case the only special questions submitted to the jury were answered in such a manner as to indicate the general verdict was based upon the finding of agency, upon which the jury had been erroneously instructed, thus imputing the negligence of Roberts to Angell, the appellee herein. Under these circumstances, the general verdict does not import a finding in favor of the appellant with respect to the second issue of negligence alleged in the petition, which was not covered by the special questions.

The appellant contends that the prohibition against slow-moving traffic is intended to apply only when there may be vehicles approaching from the opposite direction. Thus, the argument is that since no traffic was shown to have been approaching the Roberts automobile in the opposite lane of traffic, there was no evidence upon which a finding could be made that the statute had been violated and no instruction on that phase of the case should have been given. Clearly, there is no provision in the statute which limits its application only to situations where traffic is approaching from the opposite direction.

A vehicle being operated at a subnormal speed may very well create a hazard upon a highway designed and customarily used to carry fast-moving traffic, even though no vehicle may be approaching upon the road from the opposite direction so as to prevent a passing of the slow-moving vehicle overtaken. Distances are deceptive at high speeds and mental calculations of braking distances and stopping times are apt to prove faulty at such higher velocities. This is not to say that one who miscalculates in such matters may not be guilty of negligence in so doing. It is but the recognition of human frailties in such regards that might well have impelled the legislature to enjoin any slow-moving traffic which would result in hazard to life, limb or property, regardless of whether the traffic it impedes be approaching from the front or rear, or from both directions.

We conclude the trial court did not err when it entered an order granting the plaintiff in the lower court a new trial.

The effect of an order of the trial court granting a new trial is to set aside the verdict and the answers to all the special questions. The case stands as it did before trial with the issues made by the pleadings remaining undetermined. There is no verdict, nor are there special questions. (*Nicholas v. Latham*, 179 Kan. 348, 295 P. 2d 631; and authorities cited therein.)

The judgment of the trial court is affirmed.