232 So.2d 323 (1970)
Mrs. Jetty FAIRBANKS et al., Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
Mrs. Ivy Cleo VILARDO et al., Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
Mrs. Dora C. PEMBERTON et al., Plaintiff-Appellee,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
Nos. 11350, 11351, 11352.
Court of Appeal of Louisiana, Second Circuit.
February 3, 1970.
Rehearing Denied March 3, 1970.
Writ Refused May 4, 1970.
*324 Theus, Grisham, Davis, Leigh & Brown, by John C. Theus, Monroe, for appellant.
Lancaster, Baxter & Seale, by E. H. Lancaster, Jr., Tallulah, Hayes, Harkey & Smith, by Thomas M. Hayes, Jr., Monroe, George Spencer, Tallulah, for appellees.
Before AYRES, DIXON and PRICE, JJ.
PRICE, Judge.
This is a review of a jury verdict in favor of three plaintiffs in consolidated tort actions awarding an aggregate sum of $319,999.00.
The husbands of Mrs. Jetty Fairbanks, Mrs. Ivy Cleo Vilardo and Mrs. Dora C. Pemberton were riding as guest passengers in an automobile belonging to the incorporated municipality of Tallulah, Louisiana, on March 14, 1967, at around 10:00 o'clock, P.M. The automobile was being driven by Jimmy Rogan, the Chief of Police of Tallulah, in a northerly direction on U. S. Highway 65. At a point approximately one-half mile from the city limits of Tallulah, this automobile was struck from the rear by an automobile driven by James S. Dempsey. The gasoline tank of the Rogan vehicle was ruptured *325 on impact, causing it to instantly catch fire, resulting in the death of all four occupants.
Tort actions were filed by Mrs. Fairbanks, Mrs. Vilardo and Mrs. Pemberton against the following parties: James E. Dempsey and his liability insurer, State Farm Mutual Automobile Insurance Company; Travelers Insurance Company, the liability insurance carrier on the vehicle owned by the City of Tallulah, being driven by its employee, Jimmy Rogan; and Chrysler Corporation, manufacturer of the Rogan vehicle.
In each of these actions plaintiffs sue in their individual capacities for the loss of love, affection and support caused by the death of their husbands, and on behalf of their minor children for the loss of the love, guidance and moral support of their deceased fathers.
The actions against the Chrysler Corporation, based on certain alleged inherent defects in manufacture which contributed to the deaths resulting from this accident, were dismissed by summary judgments, and no appeal has been taken from these judgments.
These cases were consolidated for the purpose of trial and appeal and contain identical allegations of negligence against the parties defendant. It is contended by plaintiffs that the fatal accident was caused by the combined negligence of James E. Dempsey and Jimmy Rogan. Dempsey is accused of negligence in driving at an excessive speed, failing to observe the Rogan vehicle in time to avoid a collision, and driving while under the influence of intoxicating beverages.
Rogan is alleged to have been negligent by either stopping his vehicle in the paved portion of the highway at night, or driving at an unreasonably slow rate of speed at night in a sixty mile per hour speed zone.
On these issues the cases were tried before a jury, who rendered verdicts in favor of each plaintiff against all defendants, in solido, for the sum of $89,333.00 in her individual capacity and for each of their minor children the sum of $4,000.00. The judgments signed by the district court limit the effect of these judgments to the policy limits against Travelers of $100,000.00 for any one person, and $300,000.00 total for one accident, and against State Farm to $10,000.00 for any one person and $20,000.00 total for one accident.
From this judgment only Travelers Insurance Company appealed, contending that the jury committed manifest error in finding that Jimmy Rogan was guilty of any negligence which was a proximate cause of this accident.
The evidence on which the verdict is based may be summarized as follows:
James E. Dempsey, a resident of Pine Bluff, Arkansas, was en route to his home from New Orleans, driving alone in his 1966 Pontiac sedan. He testified as he was approaching Tallulah on U. S. Highway 65 he was blinded by bright lights of an approaching car, and just as it passed he suddenly saw a flash of brake lights in front of him. After attempting to swerve to the left lane, he struck the left rear of this vehicle with the right front of his car.
All of the occupants of the Rogan vehicle were killed by the resulting fire, and there were no other witnesses to the accident. Dempsey testified during trial that he thought the Rogan car was either stopped or backing up at the time he first observed the tail lights.
An investigation of the accident was made by Lt. Martin of the State Police. He testified that from all physical evidence at the scene, and from examination of the vehicles, he concluded the Rogan vehicle was moving at a speed of less than 15 miles per hour and that the Dempsey automobile was traveling approximately 70 mph. Lt. Martin further testified that he smelled alcohol on Dempsey's *326 breath and requested the physician administering emergency treatment to draw a blood sample. By consent of Dempsey this sample was analyzed by a pathologist, who found the blood alcohol content to be 0.163 percent. The testimony of Martin and the attending physician make it clear, however, that any degree of intoxication of Dempsey could only have been determined by scientific means and not by observation.
Three experts in the field of Physics testified on the question of speed of the Rogan vehicle. Defendant, Travelers Insurance Company, produced two Professors from Centenary College in the field of Physics and Engineering. Their testimony indicates the true speed of vehicles involved in a collision is difficult to ascertain from physical evidence such as damage to the vehicles and other findings at the scene. However, their opinion, based on principles of physics, indicated that the amount of damage in a rear end collision between an overtaking and preceding vehicle, as involved herein, is proportionate to the slowness of the preceding vehicle and the speed of the following vehicle at the point of impact. This principle applied to the facts of this case means the faster the speed of the Dempsey vehicle the slower the speed of the Rogan car.
Roy Herd, of the State Police Crime Laboratory, testified for plaintiffs. In qualifying himself as an expert in accident analysis and evaluation, Herd testified he was a graduate of Louisiana State University with a degree in Chemistry and a minor in Physics. He had seventeen years with the State Police Crime Laboratory and had investigated some 1,200 accidents in this time. In his opinion the Rogan vehicle could have been stopped, or, if moving, would not have been going at more than 15 miles per hour.
Photographs of the vehicles showed the Plymouth driven by Rogan had sustained tremendous damage to the rear of the vehicle by the impact. It traveled more than two hundred feet after impact and came to rest off the highway in the ditch on the east side.
Alvin Doyle, who qualified as an expert in automobile mechanics and photography, testified to having examined each vehicle for any physical facts which would denote speed. He found the automatic transmission control shift lever on the Rogan car located near the steering wheel, fused by the fire so it could not be determined what position it was in at the time of the accident by observation. Comparative tests were made of the linkage of the rod leading to the transmission from the control lever with a new 1967 model Plymouth identical with the Rogan vehicle. As a result of this comparative test Doyle testified the Rogan car had been manually placed in low gear prior to the accident.
The negligence of Dempsey is no longer at issue. We are presented on this appeal with the sole question of whether there was sufficient competent evidence from which the trial jury could conclude that Rogan was guilty of any negligence which was a proximate cause of this accident.
We are convinced, as the trial jury must have been, that the evidence amply established that if the Rogan car was moving, it was traveling at a speed less than fifteen miles per hour. Appellant strongly argues that even conceding the Rogan car was proceeding at this very slow speed, no negligence or violation of the law can be attributed to Rogan merely by driving slow under the circumstances existing at the time. Appellant contends that the highway is straight and level in the area of the accident and no oncoming traffic was present. He suggests the "slow speed" statute could not apply under these circumstances as the following vehicle had ample room to pass in the left lane after discovery of the slow speed of the preceding vehicle.
*327 The so-called "slow speed" statute in Louisiana was placed in the Highway Regulatory Act by Act 310 of 1962 of the Legislature and amends LSA-R.S. 32:64 by adding sub-section (B) thereto. This subsection reads as follows:
"B. Except when a special hazard exists that requires lower speed for compliance with paragraph A of this section, no person shall operate or drive a motor vehicle upon the highways of this state at such a slow speed as to impede the normal and reasonable movement of traffic. Acts 1962, No. 310, § 1."
We have found no appellate court cases interpreting this statute since its enactment. A number of states have adopted a "slow speed" statute and we have been cited a case decided by the Supreme Court of Kansas involving a statute similar to ours: Angell v. Hester, 186 Kan. 43, 348 P.2d 1050. The Kansas court discussed the purpose and effect of such a statute and its application where no oncoming traffic is involved as follows:
"The appellant contends that the prohibition against slow-moving traffic is intended to apply only when there may be vehicles approaching from the opposite direction. Thus, the argument is that since no traffic was shown to have been approaching the Roberts automobile in the opposite lane of traffic, there was no evidence upon which a finding could be made that the statute had been violated and no instruction on that phase of the case should have been given. Clearly, there is no provision in the statute which limits its application only to situations where traffic is approaching from the opposite direction.
"A vehicle being operated at a subnormal speed may very well create a hazard upon a highway designed and customarily used to carry fast-moving traffic, even though no vehicle may be approaching upon the road from the opposite direction so as to prevent a passing of the slow-moving vehicle overtaken. Distances are deceptive at high speeds and mental calculations of braking distances and stopping times are apt to prove faulty at such higher velocities. This is not to say that one who miscalculates in such matters may not be guilty of negligence in so doing. It is but the recognition of human frailties in such regards that might well have impelled the legislature to enjoin any slow-moving traffic which would result in hazard to life, limb or property, regardless of whether the traffic it impedes be approaching from the front or rear, or from both directions."
We are of the opinion that our Legislature, by adoption of LSA-R.S. 32:64(B) has recognized that it is just as inherently dangerous for a vehicle to move at an unreasonably slow speed on the highways as it is to travel at an excessive speed. Either of these factors can be a contributing cause to an accident. The so-called "slow speed" statute is a protective statute having the same purpose and intent as the section of the Highway Regulatory Act prohibiting the stopping or parking of a vehicle on the paved portion of a highway. The jurisprudence has held that the obstruction of a highway is negligence per se, and if it is a cause in fact of an accident, it is actionable negligence. Dixie Drive It Yourself of New Orleans v. American Beverage Co., 242 La. 471, 137 So.2d 298; Rosson v. Goodrum, 219 So.2d 802 (Ct.La.App., 2d Cir., 1969).
The true cause of this type of collision is the closing of the distance in between a fast moving and slowing moving vehicle in such a short period of time that the driver of the fast moving vehicle is usually not capable of exercising the required degree of perception to avoid a collision. Thus, the slightest degree of inattentiveness by the driver of the fast moving car, coupled with the unexpected presence of the unreasonably slow moving vehicle combines *328 to cause a collision. Therefore, the negligence of each driver is a cause in fact of the accident.
Whether or not the speed in a particular case is slow enough to be in violation of the regulatory statute, and whether it is a legal or proximate cause of an accident, must necessarily be determined in relation to all of the facts and circumstances existing in that particular case. This would properly be a question to be decided by the trial judge or jury, and if there is sufficient evidence to support their finding, appellate courts should not substitute their own conclusion for that of the jury.
There is sufficient evidence in this case to support the finding of the jury that Rogan was negligent in traveling at such a slow speed as to impede the normal flow of traffic, and that his negligence was a proximate cause of the accident.
Although appellant has urged in brief that the awards in favor of the widow in each case is excessive, we do not find the evidence to so indicate. Pemberton and Vilardo were each 41 years of age, and Fairbanks was only 46. Their annual incomes were approximately $5,000.00. Evidence of future earnings, given by a certified public accountant, range between $65,000.00 to $168,000.00. Each plaintiff is not only entitled to the loss of expected future support from her husband, but is entitled to be compensated for her grief and sorrow, loss of love and companionship, comfort and protection. It would not appear that the jury has exceeded its discretion in awarding each of these plaintiffs the sum of $89,333.00. There is no complaint in regard to the amount awarded to the plaintiffs on behalf of their minor children.
We find no error in the judgment appealed from and the judgment in each of the cases is affirmed. All costs of this appeal are to be paid by appellant.