IVY HAGEMAN, Plaintiff and Respondent, v. LAWRENCE
E. TOWNSEND, Defendant, and MARVIN D. HOLDIMAN
and BELGRADE DE-HY, Inc., a Montana Corporation,
Defendants and Appellants.

No. 10734

Submitted November 5, 1964.  Decided January 15, 1965.

398 P.2d 612.

Poore, Poore & McKenzie, Butte, Allen R. McKenzie (argued), Butte, for appellants.

Morrow & Nash, Lyman H. Bennett, Jr., Bozeman, James H. Morrow, Jr., and Donald A. Nash (argued), Bozeman, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Appeal from judgment entered in the district court of Gallatin County following return of a jury verdict for plaintiff.

The record discloses that plaintiff's son, Richard Lee Hageman, was killed on July 22, 1962, while riding as a passenger in a car owned and being operated by one of the defendants, Lawrence E. Townsend. Marvin D. Holdiman, another defendant, was operating an alfalfa truck in the course of his employment by the defendant, Belgrade De-Hy, Inc. The truck and its semi-trailer had approached U.S. Highway 10 from the Allsop road a few miles west of Belgrade, Montana. Holdiman saw cars approaching in his intended lane but they were at least a mile away as he pulled out onto the highway. It was nighttime, but the weather was clear and the road dry with little or no grade.

It might be reasonable to assume that Townsend's car was one of the ones Holdiman saw coming a mile away as he drove the truck out onto the highway. Townsend passed a car, presumably the other one Holdiman saw, and then came up on the truck. The testimony of Townsend is that the truck suddenly loomed up ahead of him and that he could see that it was going too slow for him to stop before hitting it. Townsend quickly pulled out to pass the truck but a car approaching

from the opposite direction forced him to drift back into the right lane. As the car passed Townsend tried to pass again but did not make it. The right front of the car struck the left rear of the truck. Plaintiff's son, who was riding in the front seat of the Townsend car, next to the driver, suffered fatal injuries. The collision occurred about 1,000 feet from where the truck turned onto the highway. At the time of the impact Holdiman was still shifting and had achieved a speed of between 15 to 25 miles per hour. The testimony indicates that Townsend was traveling at a speed of not less than 45 miles per hour nor greater than 60 miles per hour.

The plaintiff sued Townsend, the Belgrade De-Hy, Inc., owner of the truck, and the driver, Holdiman, for damages for allegedly negligently causing the death of her son. She contended that the truck was traveling so slow as to impede the normal flow of traffic in violation of section 32-2147, R.C.M.1947; that the truck did not have the rear clearance lights on; that Townsend was negligent in his operation of the car; and that the individual or combined negligence of the defendants constituted the proximate cause of her son's death.

The defendant Townsend argued that the negligence of the truck company was the proximate cause; that any negligence of Townsend was ordinary negligence and was assumed by deceased under the guest law; and that deceased was negligent in failing to warn Townsend of the danger.

The truck company contended that Townsend's negligence was the proximate cause, and that deceased was guilty of contributory negligence. All defendants argued that deceased had assumed the risk of the accident.

The case was tried to a jury and the verdict was against the truck company, but not against Townsend. The appeal has been taken by the defendant, Belgrade De-Hy, Inc. Several specifications of error are assigned, and we will consider those relating to the slow speed statute and to the lights as determinative of this appeal.

In the specifications of error it is asserted that it was error for the judge to give the slow speed statute as an Instruction without giving the defendant's proposed Instruction 2, which would have qualified that statute.

As to our discussion of the slow speed statute hereafter we wish to make it clear that its application was agreed to by all parties and the only question posed is with respect to the court's instructions.

The slow speed statute, section 32-2147, R.C.M.1947, provides, in relevant part:

"(a) No person shall drive a motor vehicle at such slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law.

"Police officers or highway patrolmen are hereby authorized to enforce this provision by directions to drivers, and in the event of apparent willful disobedience to this provision and refusal to comply with direction of an officer in accordance herewith the continued slow operation by a driver shall be a misdemeanor, except that inability to comply with such order will not be construed as willful disobedience."

Subsection (b) pertains to authority to designate a specific minimum speed and so mark the highway, but this is not in issue here. The trial judge gave an Instruction containing the substance of the first paragraph of the statute, adding that failure to comply with that rule constituted negligence as a matter of law.

Defendant's proposed Instruction 2 reads as follows:

"You are instructed that there was no minimum speed limit in miles per hour in effect at the time and place of the accident. In considering the question of the speed of the vehicle owned by the defendant, Belgrade De-Hy, Inc., and driven by the defendant, Marvin D. Holdiman, you must consider whether it had been on Highway 10 a sufficient time and distance that he could, under normal operation of the vehicle,

acquire such speed as not to impede traffic. Therefore plaintiff must prove by the greater weight of the evidence not only that the vehicle was being driven at such a slow speed as to impede or block the normal and reasonable movement of traffic, but also that the vehicle had been on the main highway sufficient time and distance to allow the driver, under normal operation of the vehicle, to acquire such speed as not to impede traffic, or she has failed to meet the required burden of proof as to this contention.''

Thus, in this appeal we are brought to a consideration of section 32-2147, supra, and whether this section should be qualified to provide that a vehicle must be shown to have been on the road long enough to achieve normal speed before liability may be imposed.

The general rule in states having slow speed statutes like Montana's is that the statute may be used as a basis for liability. The purpose for the statute is rooted in recognition that the slow driver may be the cause of fatal highway accidents as well as the fast driver. Netterville v. Crawford, 233 Miss. 562, 103 So.2d 1; Lafferty v. Wattle (Mo.App.1961), 349 S.W.2d 519; Griffin v. Illinois Bell Telephone Company, 34 Ill.App.2d 87, 180 N.E.2d 228; Seaton v. Spence, 215 Cal.App.2d 761, 30 Cal.Rptr. 510; Anno. 66 A.L.R.2d 1194.

In the Netterville, Lafferty, and Griffin cases, supra, the two colliding vehicles had been traveling at highway speeds and the collisions occurred due to the slowing of the forward vehicle. In the instant case the truck was not traveling at highway speed but had just turned out onto the highway and was accelerating when the accident occurred. These special facts form the basis of the appellant's contention that the slow speed statute does not apply in this case unless it is shown that the truck had been out on the highway long enough to achieve the normal speed of the flow of traffic. There is authority that it is not intended for the statute to apply unless it is first shown that the vehicle was able to be going at

the speed of the "normal" stream of traffic. 7 Am.Jur.2d, Automobiles and Highway Traffic, § 190, 740; Fisher, Vehicle Traffic Law, Traffic Institute Northwestern University, 1961, p. 236.

We have been able to find but three cases in point on the issues of the ability of a vehicle to travel at the normal speed or the time for a vehicle to achieve normal speed from a stop or after turning onto the highway. Two Minnesota cases and a Georgia case are helpful, but the scope of tolerance permitted is not settled by this meager authority.

In Satter v. Turner, 251 Minn. 1, 86 N.W.2d. 85, 66 A.L.R.2d 1178, the accident occurred 117 feet from where the truck turned onto the highway. A car coming up behind the truck passed it as it was still accelerating. The car collided with a car traveling in the opposite direction. The passing car sued the truck and the other car and received a verdict. On appeal the Minnesota court felt that insofar as the truck was concerned 117 feet was not a sufficient distance after turning for the slow speed statute to apply without qualification. The court required that the statute be qualified by an instruction that the truck must first be found to have been on the highway long enough to have achieved the normal speed of the flow of traffic before the statute will apply.

However, in Lee v. Smith, 253 Minn. 401, 92 N.W.2d 117, the same court did not require the qualifing instruction to be given. There, the truck had been on the highway for 750 feet before the collision occurred. No reasoning is given for the holding; the court simply stated that the 750 feet was long enough for the truck to have achieved normal speed.

In Mishoe v. Davis, 64 Ga.App. 700, 14 S.E.2d 187, the Georgia court spoke in terms of an instruction which would allow the jury to determine whether it was "reasonably practical" for the vehicle to do a greater speed. In any event, the Georgia court is requiring that the issue be a factual question for the jury instead of a question of law for the court.

516

In light of the Satter and Mishoe cases we agree with appellant's contention that proposed Instruction 2 should have been given. This instruction is a reasonable one.

The Lee case is not reasonable in its holding that the court may decide that 750 feet is a sufficient distance. Tractors, large trucks, and other heavy equipment may take 750 or 1,000 or many more feet to achieve the normal speed or they may never be able to get up enough speed to fit into the flow. Appellant cites one case that clearly provides that a large truck is not to be required to slow down on the highway because its size at great speeds makes a very large snow cloud encompassing the cars that follow. The Federal district court stated in that case that, "such a requirement would in effect bar legal use of the highways to large trucks under the conditions existing at the time of this accident. Yet licensed carriers and private vehicles are equally entitled to the use of the highways." Merithew v. Hill, D.C., 167 F.Supp. 320, 327.

Ruling as we have that proposed instruction No. 2 should have been given we should further comment that we are not impressed with the authorities cited by appellant that the violation of the slow speed statute under the facts here is excusable because it resulted from causes or things beyond the control of those charged with the violation. The intendment of all cases cited is that there be some external force acting on the vehicle to slow it down and not some defect in the truck or the way it is being driven. In State ex rel. McKinney v. Richardson, 76 Idaho 9, 14, 277 P.2d 272, 274, the Idaho court said:

"In some cases * * * a violation may be justifiable or excusable, but to be justified or excused the violation must arise out of circumstances beyond the control of the violator." This is not the record here.

The second part of this appeal involves appellant's specifications of error relating to the rear lighting of the alfalfa truck. All parties stipulated that the statutory amount of lighting

was on the rear of the truck and the only issue to be argued was whether those lights were actually on just before and at the time of the accident.

There is evidence that the lights were out at the field while the truck was being loaded. It was possible for the driver to turn on only the headlights because the headlights and rear lights were operated by separate switches. Some witnesses testified that immediately after the accident they did not think the lights were on. Patrolman Stolfuss testified, however, that about one-half hour after the accident he arrived and the rear lights were on. The driver testified that the lights were on just before and at the time of the accident, but this was denied by Townsend and one of his passengers, Joyce Reidelbach. Appellant argues very emphatically that there is insufficient evidence to substantiate the light issue and that the testimony of two witnesses, Parsons and Chandler, was prejudicial.

Parsons and Chandler were in different cars and both traveled the highway that night. Each testified as to seeing a Belgrade De-Hy truck on the road at about the time and location of the accident. They stated that the rear lights were not on. Appellant objected to this line of testimony on the ground that no foundation had been laid to show that the truck the two men saw was the one involved in the accident. After repeated attempts by plaintiff to introduce this testimony the court finally allowed it in, but the foundation was never laid. The testimony showed that the accident happened at about 12:45 a.m. and that it was at about that time that Parsons arrived in Bozeman. This was an attempt to show that he had seen the truck at about 12:20 a.m. on the road and then continued on into Bozeman, a twenty-five minute trip. Chandler's testimony is similar, but neither could say that the truck they saw was the one involved in the accident. There is testimony that there were three Belgrade De-Hy trucks carrying alfalfa along the highway that night, and each was following the same path as the one involved in the accident, in

fact Holdiman was alternately operating the three trucks, and he was making three or four round trips per hour. This would reasonably mean that one might see a Belgrade De-Hy truck along that stretch of the road off and on every few minutes all evening.

Parsons, a nephew of plaintiff, and Chandler, his father in law were the only witnesses to testify concerning lights on Belgrade De-Hy trucks before the accident, and both admitted they did not know whether the truck they saw was the one involved in the accident. The status of the lights after the accident is almost meaningless because the driver could either turn them on or turn everything off in disengaging the truck. Therefore, the testimony of Parsons and Chandler is very critical testimony. For this reason it was essential for the court to insist that the proper foundation be laid before it was admitted. The court did not do this and accordingly we hold that it was error to permit Parsons' and Chandler's testimony without a proper foundation.

Appellant challenges the sufficiency of the evidence on the issue of whether the rear lights were on, and without the testimony of Parsons and Chandler the evidence does seem to us to be inconclusive. Here plaintiff's case requires us to first infer that the truck seen by Parsons and Chandler was the one involved in the accident and then to infer that the lights were off at the time of the accident because they saw lights off on a Belgrade De-Hy truck. This is an inference based on an inference and is not proper evidence. Ashley v. Safeway Stores, Inc., 100 Mont. 312, 323, 47 P.2d 53.

While we have examined and considered the other specifications of appellants they have not been discussed since we fail to find error therein.

The judgment is reversed and the case is remanded for a new trial.

MR. JUSTICES CASTLES, JOHN CONWAY HARRISON, DOYLE, and ADAIR concur.