LEO, Appellant v. ADAMS, Respondent

(208 N.W.2d 706)

(File No. 11100. Opinion filed June 20, 1973)

Alan F. Glover, Brookings, for plaintiff and appellant.

Davenport, Evans, Hurwitz & Smith, Lyle J. Wirt, Sioux Falls, for defendant and respondent.

WINANS, Justice.

This action arises out of a two car accident which occurred December 9, 1968 about 12:30 A.M. on Interstate Highway 29 to the north of the intersection of West 41st Street and Interstate 29 on the west side of Sioux Falls. Injured in the accident was the plaintiff, a passenger in the car being driven by her husband, Daniel A. Leo. They were proceeding north toward Brookings on Interstate 29 and plaintiff was seated in the front on the passenger side, sleeping at the time of the collision. The defendant, driving a 1958 Mercury Turnpike Cruiser was accompanied by his wife seated in the front on the passenger side. The jury returned a verdict for the plaintiff. Judgment on the verdict so returned was entered by the court. Thereafter defendant made a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Defendant's motion is not made a part of the settled record but it is apparent from the record that his contention is that his negligence, if any (and he denies negligence), was not a proximate cause of the collision. The trial court agreed with the defendant and in effect held that defendant's actions were not a substantial factor in causing the collision and actually held they were "not a cause but a condition", further holding. "The collision was not reasonably foreseeable as a result of the conduct of the defendant. The collision was not the natural and probable consequence of the speed at which defendant was driving." "Judgment notwithstanding the verdict" was entered by the court, which set aside the verdict and judgment previously entered in favor of the plaintiff. The plaintiff appeals and assigns as error the court's granting of judgment n.o.v.

In this case as it reaches us, the plaintiff is entitled to have the evidence reviewed in the light most favorable to her and to have the benefit of every favorable inference that can fairly be drawn therefrom. Peterson v. Snell, 80 S.D. 496, 127 N.W.2d 142; Fossum v. Zurn, 78 S.D. 260, 100 N.W.2d 805.

At about 11:30 P.M. defendant picked up his wife at a nursing home in Sioux Falls where she was employed and drove to an establishment for hamburgers and coffee. When defendant was at the nursing home he noticed the reflection of the red taillights of his car on the building when his car was in reverse. Because defendant was unemployed, he and his wife were undecided whether to stay in Sioux Falls or return to Colorado, their former home. They decided to take a ride and discuss their problems. Defendant drove west on 41st Street. It was a cold night, the roads were dry, it was not snowing and there was no strong wind. As defendant drove down the ramp leading to Interstate 29 he slowed to about 10-15 miles per hour as he approached the yield sign located about $\frac{1}{10}$ of a mile from Interstate 29 proper. Defendant saw no cars approaching. He drove north on the interstate which has two lanes for north traffic and two lanes for south traffic with a median between the north and southbound lanes. Defendant was driving his automobile in the east lane of the two-lane road for cars northbound. After he had driven north for approximately $\frac{1}{10}$ mile he was struck in the rear by the car driven by plaintiff's husband. Defendant's speed at the time of the impact was estimated by him at between 30 and 35 miles per hour. The impact occurred in the east lane of traffic, a correct lane for cars traveling north. Plaintiff's car was traveling approximately 65-70 miles per hour on the return trip to Brookings. After passing the 41st Street viaduct he began slowing down in anticipation of taking the Highway 16 exit in order to procure gasoline. He estimated his speed at about 65 miles per hour when he first saw defendant's car in front of him and that defendant's car was no more than 50 feet ahead of him when he first saw it and that if it was moving at all, it was at a very slow rate. In response to the question of how the Adams car came into his view, Mr. Leo replied, "Well, I just remember some of the glare from my headlights or seeing an object there. I don't recall seeing any reflectors or anything which were on a car other than the lights." Mr. Leo was driving with his lights on dim at the time of the accident, and further testified that he did not see any lights on the Adams car and "Well, the first thing I saw was a, I would say, possibly glare off the back part of the car and then, of course, I attempted to turn to the right to possibly avoid a glancing blow off into the other lane and

at the same time I attempted to step on the brake, but we had a collision before anything could really be done." The left lane of the two northbound lanes was clear of traffic. The highway patrolman who was called to the scene shortly after the accident testified that Adams' taillights were smashed in the accident and he was unable to determine whether or not they were working at the time of the collision, but that when he arrived, the headlights on defendant's car were still on, the car's motor was still running and, from his measurements, after the Adams car was struck, it went about $\frac{9}{10}$ of a mile before it came to a stop. The officer further testified that Interstate 29 is posted for speeds, the maximum night speed being 70 miles per hour, the maximum daytime 75 miles per hour and the minimum day or night 40 miles per hour, the road was nearly level in the immediate vicinity of the accident, there would be a very small incline coming from under the overpass "but it is a gradual incline all the way down for about a mile. But, visibility is clear for approximately one mile". There is evidence that both cars were in excellent running order prior to the collision.

■ The plaintiff's testimony was confined entirely to the extent and duration of her injuries and treatment thereof. It is plain that, asleep, she was exercising no control or authority over the operation of their automobile and that no contributory negligence was imputable to her. "Negligence of an operator of a motor vehicle is not imputed to the passenger or occupant of the vehicle merely because of marital relationship." Dehnert v. Garrett Feed Company, 84 S.D. 233, 169 N.W.2d 719. This is also supported by Dippert v. Sohl, 74 S.D. 236, 51 N.W.2d 699, 29 A.L.R.2d 1.

SDCL 32-25-5 provides:

"It shall be unlawful at any time for a person to drive or operate a motor vehicle upon the national system of interstate highways at a speed less than forty miles per hour unless such vehicle is so operated pursuant to a permit, issued by the state highway commission."

It is this statutory minimum speed law which defendant was violating that is the basis for his negligence. Many states have a slow speed statute, including Montana, whose statute is discussed in Hageman v. Townsend, 1965, 144 Mont. 510, 398 P.2d 612, and in part reads as follows:

> " '* * No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law.' " Sec. 32-2147, R.C.M.1947.

The Supreme Court of Montana, in applying this rule, held as follows:

> "The general rule in states having slow speed statutes like Montana's is that the statute may be used as a basis for liability. The purpose for the statute is rooted in recognition that the slow driver may be the cause of fatal highway accidents as well as the fast driver. Netterville v. Crawford, 233 Miss. 562, 103 So.2d 1; Lafferty v. Wattle (Mo.App. 1961), 349 S.W.2d 519; Griffin v. Illinois Bell Telephone Company, 34 Ill. App.2d 87, 180 N.E.2d 228; Seaton v. Spence, 215 Cal.App.2d 761, 30 Cal.Rptr. 510; Anno. 66 A.L.R.2d 1194.

> In the Netterville, Lafferty, and Griffin cases, supra, the two colliding vehicles had been traveling at highway speeds and the collisions occurred due to the slowing of the forward vehicle. In the instant case the truck was not traveling at highway speed but had just turned out onto the highway and was accelerating when the accident occurred. These special facts form the basis of the appellant's contention that the slow speed statute does not apply in this case unless it is shown that the truck had been out on the highway long enough to achieve the normal speed of the flow of traffic. * * * 7 Am.Jur.2d, Automobiles and Highway Traffic, § 190, 740; Fisher, Vehicle Traffic Law, Traffic

Institute Northwestern University, 1961, p. 236." See Annotations: Automobiles—Slow Speed—Prohibition, 66 A.L.R.2d, commencing at page 1194.

In Lafferty v. Wattle, supra, the Supreme Court of Missouri in a per curiam opinion, among other things, held:

"We think that the slow-speed statute [V.A.M.S. § 304.011] is a legislative recognition of the fact that, under certain circumstances, dawdlers, as well as speeders, can become a menace to the safety of their fellow motorists. We do not find that it has come under the scrutiny of the courts of this state, but similar slow-speed statutes have been construed in some sister states, and the general interpretation seems to be that the statute is applicable 'whether the traffic it impedes be approaching from the front or rear, or from both directions.' Angell v. Hester, 186 Kan. 43, 348 P.2d 1050, 1056. See annotation 66 A.L.R.2d 1194. Traffic in the vicinity, other than the vehicles involved, is not necessary to make the statute applicable."

■ Questions of negligence and proximate cause are usually questions of fact to be decided by the jury, and it is only when facts are not in dispute or are such as to which reasonable men could not differ that they become questions of law for the court. N.W. Bell Telephone Co. v. Henry Carlson Company, 83 S.D. 664, 165 N.W.2d 346; Bothern v. Peterson, 83 S.D. 84, 155 N.W.2d 308; Wilson v. Great Northern Railway, 83 S.D. 207, 157 N.W.2d 19.

■ The trial court held in granting the motion for judgment n.o.v. that whether the defendant's car was moving at 40 (there was no evidence of that), 35 or 30 miles per hour, or at a very slow speed, was not a substantial factor in causing the collision; that it was not a cause but a condition; that the collision was not the natural and probable consequence of the speed at which defendant was driving and quoted the case of Christensen v. Krueger, 66 S.D. 66, 278 N.W. 171, as supporting that position. In Christensen we recognized a distinction between a cause of an

accident and a condition as have other jurisdictions. In Conn v. Hillard, 82 A.2d 368, 25 A.L.R.2d 1220, the Municipal Court of Appeals of the District of Columbia held:

> "But under the law of negligence, the most generally accepted theory of causation is that of natural and probable consequences; the rule being that, in order to recover for an injury alleged to have resulted from the negligence of another, or in order that defendant, in an action for such an injury, may set up a negligent act of the plaintiff as a bar, the injury must be the natural and probable consequence of the negligence, or as otherwise stated, the wrong and the resulting damage must be known by common experience to be naturally and usually in sequence—the damage, according to the usual course of events, must follow from the wrong. The test is whether ordinary prudence would have suggested to the negligent person that his act or omission would probably result in injury.
>
> A distinction is well recognized between a cause of an accident and a condition. Thus an event may be one without which a particular injury would not have occurred; yet if it was merely the condition or occasion affording opportunity for the other event to produce the injury, it is not the proximate cause thereof."

We believe there are clear distinctions between Christensen, supra, and the case we are deciding, which materially influence the result. In Christensen it appears that the driver was traveling at the rate of 25-30 miles per hour, that he saw the lights on the rear of the truck when he was about 20 rods from it. This would be approximately 320 feet. Christensen slowed down to 15-20 miles per hour and when he was within 20 to 30 feet from the truck he discovered it was standing still. The court in Christensen held:

> "Defendant may have been negligent in stopping his truck on the highway, and in failing to put out flares as required to do by law. Putting out flares is for the purpose only of warning approaching travelers of the

obstacle on the road, but in this case Christensen saw the truck itself and knew of its presence on the road so that the flares, had they been there, would have served no useful purpose; nor did their absence in any manner contribute to the accident. Christensen could have stopped and avoided the accident, or he could have turned to the left and passed the truck without injury. He chose to drive around to the left and it was only because of the negligent and careless manner in which he handled his car that the accident occurred."

Our citation of Christensen, supra, is simply to contrast it with our case. See also Creager v. Al's Construction Co., 75 S.D. 482, 68 N.W.2d 484, and Serles v. Braun, 79 S.D. 456, 113 N.W.2d 216.

We hold that the issues in this case were properly submitted to the jury to decide. In the case of DeBerg v. Kriens, 82 S.D. 502, 149 N.W.2d 410, this court laid down the law regarding speed and distance estimates in the following language:

"Manifestly, any estimation of speed and distance in these cases at best is only a rough approximation, and such estimate cannot and should not be used as a basis upon which to determine the result by some mathematical formula."

The judgment n.o.v. of the court is reversed with instructions to reinstate the verdict of the jury and the judgment thereon.

HANSON and WOLLMAN, JJ., concur.

BIEGELMEIER, C. J., concurs specially.

DOYLE, J., not participating.

BIEGELMEIER, Chief Justice (concurring).

By reason of the fact that the trial judge relied on Christensen v. Krueger, 66 S.D. 66, 278 N.W. 171, Justice Winans, in fairness to the trial judge, properly discusses that decision in his opinion. However, as Christensen was based on erroneous conclusions and unacceptable principles of law of the type of Culhane v. Waterhouse, 51 S.D. 584, 215 N.W. 885, I must comment on it. Failing to place flares to the rear and along side the truck was a cause of the Christensen accident, and the passenger's poor eyesight was a matter of no concern. I do not understand that the opinion in any way gives present-day approval of it, as I believe it was wrong when written and is not authority today. Cf. Winburn v. Vander Vorst, 74 S.D. 531, 55 N.W.2d 609, on rehearing, 75 S.D. 111, 59 N.W.2d 819. With this explanation I concur in the opinion.