**Fred BROSNAHAN, Appellant,**

v.

**WESTERN AIR LINES, INC., and Delta Airlines, Inc., Appellees.**

**No. 89–5045.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1989.

Decided Dec. 22, 1989.

Leah J. Fjerstad, Rapid City, S.D., for appellant.

Mark F. Marshall, Rapid City, S.D., for appellee.

Before LAY, Chief Judge, and McMILLIAN and WOLLMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Fred Brosnahan appeals from an order entered in the District Court for the District of South Dakota granting a judgment notwithstanding the verdict in favor of Western Air Lines, Inc. Brosnahan brought suit against Western Air Lines for injuries he sustained while a passenger on board a Western Air Lines flight from Las Vegas, Nevada to Rapid City, South Dakota. Brosnahan was injured when a fellow passenger dropped his carry-on bag on Brosnahan's head while attempting to stow the bag in the overhead compartment above Brosnahan's seat. Brosnahan alleged that his injuries were caused by the airline's negligent supervision of the boarding process and its failure to assist passengers with carry-on luggage. After a trial on the merits, the jury returned a verdict for Fred Brosnahan in the amount of $74,600. Western Air Lines moved for a judgment notwithstanding the verdict, and the district court granted the motion. The district court let stand the jury's findings of negligence and damages, but held that Brosnahan had produced no evidence to support the jury's finding that the airline's negligence had proximately caused his injuries. For reversal, Brosnahan argues that the district court erroneously held, as a matter of South Dakota law, that the airline's negligence was not the proximate cause of his injuries. We agree, and accordingly reverse the judgment notwithstanding the verdict and remand with instructions to reinstate the jury verdict in favor of Fred Brosnahan.

I.

Facts

On March 20, 1986, Fred Brosnahan and his friend Marilyn Maltaverne boarded a Western Air Lines 727 aircraft, and located their seats in Row 16 of the coach cabin.

The coach cabin of the aircraft seats approximately 132 passengers, and the flight was nearly full. The boarding process was not conducted in a very orderly fashion, causing bottlenecks in the aisles and delay. After Brosnahan and his friend were seated, a passenger approached the overhead compartment located above Brosnahan's seat. The passenger made several attempts to fit his leather garment bag in the overhead compartment. Ms. Maltaverne, who was watching the passenger struggling with his bag, testified that the bag measured approximately 2½ feet by 2 feet and was between 10 and 12 inches wide. She estimated it weighed forty pounds. During one last attempt, the passenger dropped the bag on Brosnahan's head, causing him permanent head injuries.[1] Brosnahan testified that the passenger struggled with his bag for approximately 30 to 60 seconds before the accident, and that he made quite a commotion in doing so. The bag was stowed elsewhere during the flight.

Brosnahan established at trial that a flight attendant should have been, but was not, in the "bulkhead" of the coach cabin to assist passengers with carry-on items. The "bulkhead" refers to the wall dividing the coach cabin from the first class cabin, and on that particular aircraft it is located approximately 27 feet from Row 16 where Brosnahan was seated. Brosnahan suggested to the jury that a flight attendant standing at the bulkhead would have noticed the passenger struggling with his garment bag, and would have intervened to prevent the accident. In support of these allegations, Brosnahan introduced into evidence a Western Air Lines flight attendant manual requiring attendants to be "positioned at cabin divider[s] and throughout the cabin to ... help with the stowage of carry-on items." The senior flight attendant on Brosnahan's flight, Ms. Taylor Rosenburg, confirmed that on that particular flight an attendant was assigned to the bulkhead of the coach cabin to assist passengers during the boarding process. She also testified that if a flight attendant had

observed that particular passenger struggling with his carry-on baggage, he or she would have rendered assistance. Based on these facts, and medical evidence establishing injury, the jury found that Western Air Lines' failure to adequately supervise the boarding process and to assist passengers with their carry-on items caused Brosnahan's injuries. The jury accordingly rendered a verdict for Brosnahan in the amount of $74,600.

The district court granted Western Air Lines' motion for a judgment notwithstanding the verdict on the ground that Brosnahan failed to prove that the airline's negligence was the proximate cause of his injuries. *Fred Brosnahan v. Western Air Lines, Inc., and Delta Airlines, Inc.*, No. 88–5023, Mem. Op. at 4 (D.S.D. Dec. 21, 1988). The court also ruled as a matter of law that the airline's negligence was not the actual cause of Brosnahan's injuries, stating "the act of which complaint is made would have occurred had a flight attendant been standing right to the side of the negligent passenger." *Id.* While acknowledging that proximate cause means "an immediate cause which in natural or probable sequence produced the injury", *Mulder v. Tague*, 85 S.D. 544, 186 N.W.2d 884, 887 (1971), the district court ruled that a defendant is not liable for merely creating a condition which affords an opportunity for the negligent acts of a third party to produce the injury. Mem. Op. at 6 (citing *Leo v. Adams*, 87 S.D. 341, 208 N.W.2d 706, 709 (1973)). The district court found that Western Air Lines' negligence only afforded an opportunity for a passenger to act carelessly, and therefore its negligence was not the proximate cause of Brosnahan's injuries. *Id.*

Standard of Review

We review a judgment notwithstanding the verdict under the same standard followed by the district court. *See SCNO Barge Lines, Inc. v. Anderson Clayton & Co.*, 745 F.2d 1188, 1192 (8th Cir.1984). In resolving factual questions, we must review the evidence in the light most favorable to the party against whom the motion for judgment notwithstanding the verdict is

---

**1.** The existence or extent of Brosnahan's injuries    is not an issue on appeal.

offered. *Id.* Because the judgment in this case was ordered against Brosnahan, we must give him the benefit of all reasonable inferences that can be drawn from the evidence. *Id.* If under these standards there is evidence in the record upon which a reasonable juror could find for Brosnahan, the judgment for Western Air Lines notwithstanding a verdict in Brosnahan's favor must be reversed.

As to questions of law, we review the rulings of the district court *de novo.* Because federal jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332, we are bound by the law of South Dakota governing causes of action in tort. *Erie Railroad Co. v. Tomkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## II.

The district court based its decision on a line of South Dakota cases recognizing a distinction between the cause of an accident and a condition affording an opportunity for an accident to occur. In the most frequently cited case, a defendant who negligently spilled bentonite on a highway was relieved of liability for injuries sustained when a negligent driver, weeks later, skidded and injured the plaintiffs. *Norman v. Cummings,* 73 S.D. 559, 45 N.W.2d 839 (1951). The South Dakota Supreme Court reasoned that the spilling of bentonite was a mere circumstance of the accident, known to the speeding driver, which only furnished a condition by which the independent act of the negligent driver produced the injury. *Id.* 45 N.W.2d at 841. The same reasoning is found in two cases where a plaintiff who was maneuvering around a disabled vehicle left on the side of the road was hit by an oncoming vehicle. *See Snodgrass v. Nelson,* 369 F.Supp. 1206 (D.S.D.), *aff'd,* 503 F.2d 94 (8th Cir.1974)

(*Snodgrass* ); *Bruening v. Miller,* 57 S.D. 58, 230 N.W. 754 (1930) (*Bruening* ). In each case, the operator of the parked vehicle and the driver of the oncoming vehicle were found negligent, but the operator of the parked vehicle was relieved of liability because the presence of the vehicle on the side of the road was only a condition under which the acts of the negligent driver caused injury. *Snodgrass,* 369 F.Supp. at 1211 (decision as to parked vehicle not appealed); *Bruening,* 230 N.W. at 759. For the following reasons we find these cases distinguishable from a case involving allegations of negligent supervision, such as the case here.

The distinction between "condition" and "cause" applies to a negligent defendant whose failure to act created a static condition which made the injury possible.[2] W. Page Keeton, Prosser & Keeton on the Law of Torts 277 (5th ed. 1984) (Prosser & Keeton). It refers to the type of case "where the forces set in operation by the defendant have come to rest in a position of apparent safety, and some new force intervenes." *Id.* at 278. In this case, Western Air Lines' failure to supervise and assist passengers in stowing their carry-on luggage did not create a static condition. An airline's duty to supervise the boarding process for the protection of its passengers continues until boarding is completed, and the danger created by an airline's breach of that duty does not abate until all passengers are seated with their carry-on luggage properly stowed. Brosnahan was injured when the forces created by the airline's negligence were still in continuous operation.[3] *See* Restatement (Second) of Torts § 439 (1965) (cited in *Mulder v. Tague,* 186 N.W.2d at 887.).

Nor was the passenger's carelessness "independent" of the airline's negligence,

2. The distinction between "condition" and "cause" in tort law is now widely discredited, and we are not convinced that South Dakota still recognizes it. *See* W. Page Keeton, Prosser & Keeton on the Law of Torts 277–78 (5th ed.1984). We need not decide that precise issue, however, because we hold that the distinction is not applicable to the case at bar.

3. In cases such as this where a third party intervenes and directly causes harm, most jurisdictions would ask whether the third person's

conduct is a "superseding cause" which relieves the otherwise negligent party from liability. *See* Restatement (Second) of Torts § 440 (1965). The third party's conduct may be a superseding cause if it produces the harm after the negligent act or omission has been committed and if it is independent of any situation created by the other party's negligence. *Id.* §§ 441, 442. By contrast, "if the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active

as the South Dakota Supreme Court characterized the conduct of the negligent driver who skidded on the slippery road in *Norman v. Cummings*, 45 N.W.2d at 841. In *Norman v. Cummings*, the party responsible for spilling the bentonite on the highway had no duty to supervise the driver whose negligent act injured the plaintiffs. In the case at bar, by contrast, the jury found that the airline breached a duty to supervise the passenger whose conduct injured Brosnahan.

Western Air Lines' negligence was neither unrelated to the act of the passenger dropping his bag on Brosnahan's head, nor merely a static condition which made the act possible. Therefore, we hold that the distinction relied upon by the district court between "condition" and "cause" is inapplicable to the case at bar.

### III.

We turn now to whether there was sufficient evidence from which the jury could infer that Western Air Lines' negligence was a substantial factor in bringing about Brosnahan's injuries and whether those injuries were a foreseeable consequence of the airline's failure to properly supervise the boarding process.[4] *See Leslie v. City of Bonesteel*, 303 N.W.2d 117, 119 (S.D.1981). South Dakota cases also describe causation in terms of "an immediate cause which, in natural or probable sequence, produces the injury complained of." *Id.* at 120; *see also Mulder v. Tague*, 186 N.W.2d at 887.

Certainly reasonable minds could differ as to whether the presence of a flight attendant 27 feet away from Brosnahan's seat could have prevented the accident. The district court found that the presence of an attendant at the side of the careless

passenger could not have prevented the accident. We do not agree. The jury was told that the passenger was struggling with his luggage for at least thirty seconds; that the passenger's efforts made a commotion; and that if a flight attendant had observed the passenger struggling with his bag, he or she would have rendered assistance. In addition there was sufficient evidence from which a juror could find that the harm that resulted was a foreseeable and probable consequence of the flight attendant's failure to supervise the stowage of carry-on luggage in the coach cabin. The jury was told that one of the reasons flight attendants are positioned throughout the cabin is to protect the safety of passengers. Ms. Rosenburg admitted that a passenger could be injured if the boarding process is not adequately supervised. In light of this evidence, it was erroneous for the judge to decide the causation element as a matter of law.

In conclusion, we hold that the district court incorrectly applied a distinction between "condition" and "cause" in granting Western Air Lines' motion for a judgment notwithstanding the verdict. We further hold that reasonable minds could differ as to the foreseeability of the injury and as to whether adequate supervision of the boarding process, specifically the presence of a flight attendant in the bulkhead of the coach cabin, could have prevented Brosnahan's injuries. Therefore, it was improper for the district court to take the case away from the jury. We accordingly instruct the district court to reinstate the jury's verdict in favor of Fred Brosnahan.

---

and substantially simultaneous operation of the effects of a third person's innocent, tortious, or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability." *Id.* § 439. The latter situation more closely describes the case at bar.

**4.** This question encompasses both cause-in-fact and proximate cause. South Dakota case law does not clearly distinguish the two elements. In most states, legal cause exists if (1) the actor's

negligent conduct is a substantial factor in bringing about the harm, *and* (2) there is no rule of law relieving the actor from liability because of the manner in which his or her negligent conduct resulted in harm. *See* Restatement (Second) of Torts § 431. The first element is generally referred to as cause-in-fact or actual cause and the second refers to proximate cause. *See* Prosser & Keeton §§ 41 and 42.