# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2718

_____

Southern Wine and Spirits of      *
Nevada, A Division of Southern    *
Wine and Spirits of America, Inc.,  *
                                 *

        Appellee,           *
                                 *   Appeal from the United States
    v.                     *   District Court for the
                                 *   Western District of Arkansas.
Mountain Valley Spring Company,  *
LLC,                            *
                                 *

        Appellant.        *

_____

Submitted: March 29, 2011
Filed: July 19, 2011

_____

Before LOKEN, SMITH, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury returned a verdict in favor of Southern Wine & Spirits of Nevada ("Southern") on its claims arising out of a distributor agreement with Mountain Valley Spring Company ("Mountain Valley") and a verdict in favor of Mountain Valley on one of its counterclaims. Notwithstanding the verdict, the district court granted judgment as a matter of law to Southern on Mountain Valley's counterclaim but denied Mountain Valley's motion for judgment as a matter of law on Southern's claims. Mountain Valley appeals both of these rulings and the district court's denial

of its motion for a new trial. For the reasons that follow, we affirm in part and reverse in part.

## I.    BACKGROUND

On March 12, 1993, Southern and Mountain Valley entered into a distributor agreement ("Agreement") granting Southern "the exclusive right to sell and distribute" bottled water products supplied by Mountain Valley within a seventeen-county region around Las Vegas, Nevada. Mountain Valley drafted the Agreement, which provided as follows with regard to its duration:

> II. TERM. The duration of this Distributor relationship shall be conditioned upon the following:
>
> 2.1  Term.
> This Agreement shall become effective upon the date set forth in Paragraph 10.18 hereof and shall remain in effect until terminated under Paragraph 2.2 or 2.3 hereof.
>
> 2.2  Termination by Mutual Consent.
> This Agreement may be terminated at any time by mutual consent of the parties embodied in a single writing signed by each party and effective as provided therein.
>
> 2.3  Termination by Default.
> This Agreement may be terminated for cause pursuant to Paragraph 5.10[1] hereof.

---

[1] Paragraph 5.10, titled "Company's Remedies," explains Mountain Valley's remedies if Southern defaults on its obligations pursuant to Paragraph 5.9, which defines six actions that "shall be considered a default:" (a) the failure to pay for

In 2004, Clear Mountain Spring Water Company bought Mountain Valley and assumed its name and the Agreement. Soon after, Mountain Valley sought to reposition its brand from focusing "on selling cheap water" to competing "in the premium segment of the bottled water business." Mountain Valley redesigned its product offerings and advertising and introduced a newly designed glass bottle in order to compete with well-established premium water products such as Voss, Evian, and Fiji. Mountain Valley asserts that Southern did not approve of this brand repositioning and did not carry and promote the full line of its high-end glass bottled water products. Mountain Valley also alleges that Southern refused to attend two of its national conferences, at which Mountain Valley sought to educate its distributors about its new marketing strategies. In 2006, Mountain Valley began negotiating with Anheuser-Busch for a nationwide distribution contract, although no agreement was consummated.

In May 2007, the course of business between the parties changed. Mountain Valley claims that it merely altered the prices and terms on which it sold products to Southern as allowed by the Agreement, while Southern claims that Mountain Valley placed its account "on credit hold" and then "refused to process, load, or ship . . . six purchase orders." On June 7, Mountain Valley representatives traveled to Las Vegas to meet with Southern representatives. Mountain Valley claims that its representatives sought to discuss the possibility of mutually and amicably terminating the Agreement if Mountain Valley's negotiations toward a national distributorship agreement proved successful. Southern claims that Mountain Valley's representatives unilaterally terminated the Agreement. Furthermore, Southern argues that, on June 18, Mountain

---

bottled water products pursuant to Mountain Valley's terms, (b) any other failure to perform an obligation under the Agreement, (c) an assignment by Southern for the benefit of creditors, (d) the discontinuation of normal services to customers or of distributorship operations, (e) a determination that Southern has practiced "bait and switch" sales techniques that utilized Mountain Valley sales materials to sell customers other non-Mountain Valley products, and (f) materially misrepresenting or misleading Mountain Valley.

Valley arranged for the Nevada Beverage Company to take over the distribution of Mountain Valley's bottled water products within Southern's exclusive distribution territory. Mountain Valley, however, claims that it did not terminate the Agreement until October 2007, after "Southern's refusal to purchase product at the prices and terms Mountain Valley set and Southern's various other defaults and non-performance."

Southern filed suit, bringing claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, fraud, failure to pay on account stated, tortious interference, and defamation. Mountain Valley asserted counterclaims for breach of the implied covenant of good faith and fair dealing, fraud, defamation, and tortious interference. Mountain Valley moved for partial summary judgment on Southern's breach of contract claim, arguing that the Agreement was for an indefinite term and, thus, terminable at will by either party. The district court denied this motion, construing the Agreement as establishing a perpetual term, rendering it terminable only according to its provisions.

Both parties moved for judgment as a matter of law at the close of the evidence. The district court dismissed Southern's claim for unjust enrichment and dismissed both parties' claims for fraud, defamation, and tortious interference. The jury returned a verdict for Southern on its claims for breach of contract and breach of the implied covenant of good faith and fair dealing, awarding damages in the amount of $818,942.00, and a verdict for Southern on its claim for failure to pay on account stated, awarding additional damages in the amount of $42,333.35. The jury also returned a verdict for Mountain Valley on its counterclaim for breach of the implied covenant of good faith and fair dealing and awarded Mountain Valley damages in the amount of $183,341.65. Southern subsequently filed a renewed motion for judgment as a matter of law on Mountain Valley's counterclaim, which the district court granted. Mountain Valley also filed a renewed motion for judgment as a matter of law and, alternatively, requested a new trial, which the district court denied. The district

court then entered a judgment in favor of Southern in the amount of $861,275.35 plus applicable pre-judgment and post-judgment interest. This appeal followed.

## II.    DISCUSSION

### A.    Term of the Agreement

Mountain Valley contends that the district court erred in construing the Agreement as having a perpetual term, rather than an indefinite term that would allow either party to terminate it at will.  Mountain Valley moved for a new trial on Southern's breach of contract claim, at which the sole issue would be whether Mountain Valley permissibly terminated the Agreement after a reasonable time and with reasonable notice.  *See Sierra Wine & Liquor Co. v. Heublein, Inc.*, 626 F.2d 129, 131 (9th Cir. 1980) (applying Nevada law) (holding that a "contract which includes no express term is terminable at will after a reasonable period, upon reasonable notice").  Southern asserts, and the district court agreed, that the Agreement was perpetual and, therefore, only terminable pursuant to its explicit terms.

We review the district court's denial of Mountain Valley's motion for a new trial for abuse of discretion.  *See United States v. Barrera*, 628 F.3d 1004, 1007 (8th Cir. 2011).  A district court abuses its discretion when it bases its decision on a legal error.  *Roach v. Stouffer*, 560 F.3d 860, 863 (8th Cir. 2009).  As such, "[w]e review *de novo* a district court's interpretation and construction of a contract, as well as a district court's interpretation of state law." *Am. Prairie Constr. Co. v. Hoich*, 594 F.3d 1015, 1023 (8th Cir. 2010).  Our subject matter jurisdiction in this case is based upon diversity of citizenship, and the parties agree that we are to apply Nevada law. *See Kaufmann v. Siemens Med. Solutions USA, Inc.*, 638 F.3d 840, 843 (8th Cir. 2011). Thus, we "must attempt to predict what [the state supreme] court would decide if it were to address the issue." *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011).

According to Nevada law, "the court shall effectuate the intent of the parties" when interpreting a contract. *Davis v. Nev. Nat'l Bank*, 737 P.2d 503, 505 (Nev. 1987). "A basic rule of contract interpretation is that 'every word must be given effect if at all possible.'" *Musser v. Bank of Am.*, 964 P.2d 51, 54 (Nev. 1998) (quoting *Royal Indem. Co. v. Special Serv. Supply Co.*, 413 P.2d 500, 502 (Nev. 1966)). "A court should not interpret a contract so as to make meaningless its provisions." *Phillips v. Mercer*, 579 P.2d 174, 176 (Nev. 1978).

The Supreme Court of Nevada addressed the enforceability of perpetual contracts for the first time in *Bell v. Leven*, 90 P.3d 1286 (Nev. 2004). In *Bell*, the contract included language regarding its duration: "the term of this agreement is perpetual or until terminated by mutual consent [of] all parties." *Id.* at 1287 (alteration in original). The state district court "concluded that the perpetual duration clause in the agreement did not provide a legally sufficient duration, and thus, determined that the duration of the agreement was for a reasonable period of time." *Id.* The Supreme Court of Nevada reversed and held that, although "courts should avoid construing contracts to impose a perpetual obligation[,] . . . when the language of a contract clearly provides that the contract is to have a perpetual duration, the courts must enforce the contract according to its terms." *Id.* at 1288.

In reaching this conclusion, the Supreme Court of Nevada cited, with approval, the Oregon Court of Appeals' decision in *Paul Gabrilis, Inc. v. Dahl*, 961 P.2d 865 (Or. Ct. App. 1998). *Bell*, 90 P.3d at 1288. In *Dahl*, the court stated that, "if there is nothing in the nature or language of a contract to indicate that the contract is perpetual, courts will interpret the contract to be terminable at will on reasonable notice. Nevertheless, where provided for, perpetual agreements will be enforced according to their terms." *Dahl*, 961 P.2d at 868. The court went on to determine that

the country club membership agreement had a perpetual duration despite the lack of an express provision to that effect. *Id*. The court also stated that, "[a]lthough the inclusion of grounds for termination in an agreement is not always a sign that the agreement can be terminated only for cause, the inclusion of such a provision strongly suggests that it is." *Id.*

Mountain Valley argues that the Agreement does not expressly and unequivocally state that it is to be perpetual because "the term 'perpetual' does not appear in the Agreement, nor do[] any other word[s] expressing a similar intent." The court in *Bell*, however, did not condition the finding of a contract's term as perpetual on the use of certain magic words; it required that the "language of a contract [must] clearly provide[]" for a perpetual term. *Bell*, 90 P.3d at 1288. Here, Section 2.1 of the Agreement states that the Agreement "shall remain in effect until terminated under Paragraphs 2.2 or 2.3." The Agreement clearly provides for a perpetual duration unless one of two specific events occurs—mutual consent to end the Agreement under Paragraph 2.2 or default as defined by Paragraphs 2.3, 5.9, and 5.10. If we were to interpret the Agreement to be terminable at will by either party, as Mountain Valley urges us to do, we effectively would nullify the contractual provisions regarding the

conditions for termination—a result rejected by Nevada law.[2] *See Phillips*, 579 P.2d at 176.

In short, Mountain Valley and Southern contemplated the duration of their relationship and agreed to a term that ends only by mutual consent or specific acts of default. *See Bell*, 90 P.3d at 1288; *cf. Lichnovsky v. Ziebart Int'l Corp.*, 324 N.W.2d 732, 739 (Mich. 1982) ("An agreement which the parties have agreed is terminable only for cause, and which is thus by their agreement to endure until so terminated, is legally enforceable until terminated on that ground."). As such, the district court did not err when it determined that the Agreement between Mountain Valley and Southern was for a perpetual term and not for an indefinite term. Accordingly, the district court

---

[2] Mountain Valley also argues that Southern's position is contradicted by the statement in *Williston on Contracts* that it "[i]t is uncommon, although not unheard of, for a promise, properly interpreted, to call for a perpetual performance." *See* 1 Williston on Contracts § 4:22 (4th ed. 2011). However, before arriving at this conclusion, Professor Williston made a threshold distinction that Mountain Valley overlooks. Professor Williston stated that policies regarding indefinite contracts are implicated only when the parties have not agreed on the manner in which the agreement will come to an end:

> In such a case, it is first necessary to interpret the promise in light of all surrounding circumstances, and with reference to its subject matter, in order to ascertain the intention of the parties. It may be that once properly interpreted, the promise means perpetual performance; it may also mean performance is to begin in a reasonable time or be continued for a reasonable time; finally, it may mean that the time was simply left indefinite with the expectation that the parties might continue performance as long as they pleased or that they would subsequently settle that term of the promise. *It is only in this last class of case that the question of indefiniteness will arise*.

*Id.* (emphasis added). Because Mountain Valley and Southern agreed specifically on the term of their relationship, our interpretation is consistent with Professor Williston's analysis.

did not abuse its discretion when it denied Mountain Valley's motion for a new trial on this basis.[3]

## B. Mountain Valley's Breach of the Implied Covenant of Good Faith and Fair Dealing

After the jury returned its verdict, Mountain Valley renewed its motion for judgment as a matter of law, *see* Fed. R. Civ. P. 50(b), on Southern's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The district court denied Mountain Valley's motion. On appeal, Mountain Valley challenges only the district court's denial of its Rule 50(b) motion for judgment as a matter of law on Southern's implied covenant of good faith and fair dealing claim. We review *de novo* a district court's denial of a post-verdict motion for judgment as a matter of law, viewing the evidence in the light most favorable to the verdict. *Canny v. Dr Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 899 (8th Cir. 2006). Judgment as a matter of law is only appropriate when no reasonable jury could have found for the nonmoving party. *Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 860 (8th

---

[3] Mountain Valley also argues that a new trial is warranted because the district court abused its discretion by excluding certain letters between counsel and management for Mountain Valley and Southern. The district court excluded the correspondence as inadmissible pursuant to Federal Rule of Evidence 408 as statements made in compromise negotiations and Federal Rule of Evidence 403 as cumulative evidence that could mislead the jury. The court also held that, even if the letters were excluded improperly, Mountain Valley failed to show that the exclusion was so prejudicial to it as to warrant a new trial. "In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). Our deference to district court determinations "is particularly true with respect to Rule 403." *Id.* After reviewing the record, we cannot say that the district court abused its broad discretion when it excluded these letters and, as such, the district court did not abuse its discretion when it refused to grant Mountain Valley's motion for a new trial on this basis.

Cir. 2002). In deciding whether to grant judgment as a matter of law, we may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict. *Schooley v. Orkin Extermination Co.*, 502 F.3d 759, 764 (8th Cir. 2007).

Mountain Valley argues that, "[w]hen actions allegedly constituting a breach of the covenant of good faith and fair dealing are also allegedly a breach of the contract itself, that claim is properly asserted as a breach of contract claim," and that Southern failed to identify the damages that resulted from Mountain Valley's alleged breach of the implied covenant of good faith and fair dealing. However, Mountain Valley did not object to the verdict form, which included separate interrogatories for Southern's breach of contract claim and its breach of the implied covenant of good faith and fair dealing claim but only a single interrogatory for "the amount that you find from the preponderance of the evidence should be awarded to Southern Wine to reasonably and fairly compensate it for the damages which you find were proximately caused by the fault of Mountain Valley." Our court "has made it very clear that[,] where the [district] court submits a single damage question for multiple claims and where the evidence supports the actual damage award on any of the claims, the award will not be set aside." *Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1159 (8th Cir. 2003). Therefore, because Mountain Valley did not appeal the district court's denial of its renewed motion for judgment as a matter of law on Southern's breach of contract claim, we nonetheless affirm the jury's award of damages to Southern on its unchallenged breach of contract claim. *See LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342, 346 n.7 (8th Cir. 1981) ("We need only find that LeSueur is entitled to recover on one of its claims to sustain the verdict."); *see also Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 822-23 (8th Cir. 2004). As such, the district court did not err when it denied Mountain Valley's renewed motion for judgment as a matter of law on Southern's implied covenant of good faith and fair dealing claim.

**C.** **Southern's Breach of the Implied Covenant of Good Faith and Fair Dealing**

Mountain Valley argued that Southern breached the Agreement's implied covenant of good faith and fair dealing by failing to carry and market its high-end glass bottled water products and focusing instead on selling Mountain Valley's less-profitable small plastic bottled water products. The jury returned a verdict in favor of Mountain Valley on its counterclaim for breach of the implied covenant of good faith and fair dealing, awarding damages of $183,341.65. In its renewed motion for judgment as a matter of law, *see* Fed. R. Civ. P. 50(b), Southern argued that Mountain Valley failed to present a sufficient evidentiary basis to link Mountain Valley's alleged damages to its claim for breach of the implied covenant of good faith and fair dealing, as opposed to its claims for tortious interference with business relationships, defamation, and fraud, which ultimately were not submitted to the jury. Southern argued that Mountain Valley failed to establish a sufficient factual basis on which the jury could award damages on its claim for breach of the implied covenant of good faith and fair dealing because Mountain Valley's damages expert, Barclay Griffiths, failed to differentiate between Mountain Valley's four claims and instead calculated one total damage amount. The district court agreed and set aside the jury's verdict.

As we have noted, we review the grant of a renewed motion for judgment as a matter of law "under the same standard followed by the district court." *Brosnahan v. W. Air Lines, Inc.*, 892 F.2d 730, 732 (8th Cir. 1989). Judgment as a matter of law is only appropriate when no reasonable jury could have found for the nonmoving party. *Mattis*, 295 F.3d at 860. In our analysis, we may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict. *Schooley*, 502 F.3d at 764.

According to Nevada law, "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes [sic] the intention and spirit of the contract, that party can incur liability for breach of the

implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods, Inc.*, 808 P.2d 919, 922-23 (Nev. 1991); *see also Frantz v. Johnson,* 999 P.2d 351, 358 n.4 (Nev. 2000) ("An implied covenant of good faith and fair dealing exists in every Nevada contract and essentially forbids arbitrary, unfair acts by one party that disadvantage the other."); *Overhead Door Co. of Reno v. Overhead Door Corp.*, 734 P.2d 1233, 1235 (Nev. 1987) ("[A]n implied covenant of good faith forbids arbitrary action by one party that disadvantages the other." (alteration in original) (quoting *Resource Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1037 (Utah 1985))). Also, under Nevada law, "[t]he plaintiff has the burden to prove the amount of damages it is seeking." *Clark Cnty. Sch. Dist. v. Richardson Constr., Inc.*, 168 P.3d 87, 97 (Nev. 2007). "Although the amount of damages need not be proven with mathematical certainty, testimony on the amount may not be speculative." *Id.*; *see also Clark Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co.*, 784 P.2d 954, 955 (Nev. 1989) (holding that the plaintiff has the burden to provide the court with "an evidentiary basis upon which it may properly determine the amount of plaintiff's damages").

According to the district court, "[a] review of Griffiths' testimony fails to disclose any evidence of facts which would establish a link between any conduct on the part of Southern . . . with damages suffered by Mountain Valley specifically because of Southern['s] alleged breach of the implied covenant of good faith and fair dealing." Southern contends that the district court reached the correct conclusion: "Griffiths could not segregate harm allegedly caused by Southern from other factors, much less point out the harm caused by Southern's alleged breach of the implied covenant of good faith and fair dealing." In opposition, Mountain Valley argues that "[t]he law does not require an expert to pair his opinion on damages to a particular cause of action." Likewise, Mountain Valley asserts that "Griffiths did not identify a legal cause of action; he identified the actions of Southern that resulted in the damages to Mountain Valley that he calculated, i.e. Southern performed better as a

distributor for other high-end waters (Voss, Fiji and Evian) than did the overall U.S. market, and worse for Mountain Valley than did the overall U.S. market."

We agree with Mountain Valley that Griffiths's testimony, when taken in the context of Mountain Valley's claim for breach of the implied covenant of good faith and fair dealing, provided a sufficient evidentiary basis on which the jury could award damages to Mountain Valley for this claim. Griffiths testified that, "if Southern . . . could over-perform for [Voss, Fiji, and Evian], then if you took that average over-performance, which is about 13 percent, then Mountain Valley sales in Nevada would have been much higher. So it's really calculating what it should have been if Mountain Valley did as well as the average of these three brands." Griffiths's testimony is consistent with Mountain Valley's evidence supporting its claim for breach of the implied covenant, which suggested that Southern contravened "the intention and spirit of the contract" by failing to carry out Mountain Valley's brand repositioning and by failing to promote and distribute Mountain Valley's high-end glass bottled water products in the same manner as it promoted and distributed other similar products. *See Hilton Hotels*, 808 P.2d at 922-23.

Griffiths calculated Mountain Valley's damages by first determining the percentage by which Mountain Valley products underperformed in the Nevada market as compared to the national market. Griffiths next determined the percentage by which other high-end bottled water products distributed by Southern over-performed in the Nevada market as compared to their sales in the national market. He then determined the number of extra cases of Mountain Valley products that would have been sold had Mountain Valley products over-performed in the Nevada market to the same degree as the three other high-end brands. At this point, Griffiths multiplied the number of cases that Southern allegedly would have sold by Mountain Valley's profit per case for the years 2004, 2005, and 2006, and added this number to an estimate of

future lost profits derived from the Gordon growth model.[4]  As a result, Griffiths determined Mountain Valley's total damages to be $399,713.00.  We believe that this was a reasonable method of estimating the damage that would be caused by the failure to carry, market, and promote Mountain Valley's high-end glass bottled water products.

Moreover, Griffiths fully explained to the jury how he reached his damage amount, and Southern subjected Griffiths to lengthy cross-examination regarding his assumptions and calculations.  Southern's criticism of Griffiths's methodology and assumptions "goes to the weight of the evidence," *Weitz Co. v. M.H. Washington*, 631 F.3d 510, 527 (8th Cir. 2011), and does not lead to the conclusion that the jury had insufficient evidence on which to base its damage award.  In fact, the jury awarded less than half of the amount Griffiths had calculated, lending further support to the notion that, when the jury determined that Southern had breached the implied covenant of good faith and fair dealing, the "evidence was sufficient to enable the jury to make an intelligent estimate of . . . damages without resorting to mere speculation." *See United Fire & Cas. Co. v. Historic Pres. Trust*, 265 F.3d 722, 730 (8th Cir. 2001).  As such, the district court erred when it set aside the jury's verdict on Mountain Valley's claim for breach of the implied covenant of good faith and fair dealing.

---

[4] "[The] 'Gordon growth' model . . . assumes constant growth of an asset and then discounts this value to arrive at the present value of the terminal value." *Matrix Grp Ltd. v. Rawlings Sporting Goods Co.*, 477 F.3d 583, 594 (8th Cir. 2007).  "The [Gordon] growth model . . . has been specifically recognized as an accepted way to determine terminal value." *Id.*

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Mountain Valley's motion for a new trial and renewed motion for judgment as a matter of law, but we reverse the district court's grant of judgment as a matter of law to Southern on Mountain Valley's claim for breach of the implied covenant of good faith and fair dealing and remand to reinstate the jury's verdict and award on that claim.

———————————————